No. 101,723

STATE OF KANSAS, *Appellee*, v. RANDY DEAN HART, *Appellant*.
(301 P.3d 1279)

Opinion filed June 7, 2013.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Kendra M. Oakes*, legal intern, of office of attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Randy Dean Hart was convicted by a jury of two counts of indecent liberties with a child. This case arises on petitions for review from both parties after the Court of Appeals affirmed Hart's convictions and sentences, in *State v. Hart*, 44 Kan. App. 2d 986, 242 P.3d 1230 (2010).

Hart raised eight issues in his brief to the Court of Appeals, including a challenge to the district judge's admission of prior bad acts evidence under the 2008 version of K.S.A. 60-455. Although the panel concluded that Hart's K.S.A. 60-455 challenge was not preserved for appeal, it further addressed it, concluding in dicta that a 2009 amendment to K.S.A. 60-455 should be applied retroactively and would have doomed Hart's challenge. On the way to that outcome, the Court of Appeals rejected the State's argu-

ment that K.S.A. 2009 Supp. 60-455(d) created an exception to Kansas' traditional prohibition of propensity evidence.

We first conclude that the State's petition for review on the correct interpretation of K.S.A. 2009 Supp. 60-455(d) was improvidently granted. The State has no quarrel with the Court of Appeals panel's ultimate decision in its favor, that is, the panel's affirmance of Hart's convictions and sentences. Only a party that is "aggrieved by a decision of the Court of Appeals" is eligible to file a petition for review. Rule 8.03(a) (2012 Kan. Ct. R. Annot. 72). The State does not qualify merely because it would·have preferred a different rationale to support its victory.

On Hart's petition for review issues, we conclude that neither the prosecutor's single instance of misconduct nor the district judge's overbroad elements instruction require reversal; that any error in the justification for admission of evidence under the 2009 version of K.S.A. 60-455 was harmless; that the limiting instruction given on K.S.A. 60-455 evidence was not clearly erroneous; and that the evidence was sufficient to support Hart's two convictions. We also reject Hart's cumulative error argument for reversal and his challenge to his sentences.

FACTUAL AND PROCEDURAL BACKGROUND

For many years, Hart was married to Stacy, now Stacy Taylor. Hart has a daughter, C.H., and three sons from a previous relationship. He and Stacy together have a daughter, K.H. In addition, Stacy and her mother, Belinda Brown, have always taken care of Stacy's cousin, N.B. N.B has muscular dystrophy and is confined to a wheelchair.

In May 2008, Hart was charged with two counts of aggravated indecent liberties with a child in violation K.S.A. 21-3504(a)(2)(A), a severity level 4 felony. Count I alleged that, between January 1, 2006, and July 1, 2006, Hart fondled or touched the breasts of C.H., then age 15, while she was in the shower. Count 2 alleged that, between May 2005 and September 2005, Hart fondled or touched the breasts of N.B, then age 14.

Before Hart's trial, the State moved to admit prior crimes evidence. Specifically, the State sought to admit testimony explaining

how the charged allegations came to the attention of law enforcement and testimony concerning many other occasions when Hart improperly touched the victims or had them touch each other. Defendant opposed admission of any evidence other than the victims' testimony about the fondling charged.

The district judge ruled that evidence concerning defendant's prior uncharged conduct with C.H. and N.B. was relevant to establish lack of mistake or accident, motive, plan, method, "inclination," or "system of operation," and that its probative value was not outweighed by any prejudicial effect. He denied the State's motion in part, however, ruling that certain evidence relating to then 4-year-old K.H. was "significantly different" and would be "too inflammatory."

## Defendant's Trial

At Hart's October 2008 trial, Perry Russell of the Elk County Sheriff's Department testified that he was contacted by another department regarding allegations of sexual assault against C.H. and N.B. The girls were taken to Sunlight Child Advocacy Center in El Dorado, Kansas, where Nicole Stump, a child advocate, interviewed them. The girls then went to a Wichita hospital for a physical examination, the results of which were inconclusive.

C.H., who was 18 at the time of trial, testified on its first day that she had begun living with her father when she was about 5 years old and had continued to live with him until May 2008. For most of that time, Hart was married to Stacy. The family moved around quite a bit. C.H. testified about at least five different towns in which she and her father had lived, along with Stacy and various siblings. When C.H. began to have difficulty talking about her May 2008 disclosure of her father's sexual abuse, a break was taken in her testimony.

N.B., who was 17 at the time of trial, testified that she lived with Hart and C.H. from the time she was about 4 until she was about 10, and again for a year or so a bit later. She had since lived with her aunt, Brown. N.B. said she talked with police in May 2008 because she "didn't want this happening" to the "younger girls" in her family. N.B. described how, beginning when she was about 7

years old, Hart would come into her room at night and touch her between her legs. When she "was older . . . [and] started getting boobs," he started touching her breasts as well. She described a specific incident that occurred when she was 14 years old, which her aunt had witnessed. N.B. had just changed after going swimming; she was not yet in a wheelchair but needed help walking. Hart responded to her call for assistance but, rather than help her walk, defendant got behind her and "grabbed [her] boobs." N.B. testified that Brown was not the only one who knew about the inappropriate touching. C.H. also knew "because it was happening to her too." N.B. said that sometimes it was just her, C.H., and Hart present; the two girls shared a bed; and Hart would come in and touch them.

C.H. then returned to the witness stand and attempted to complete her testimony. In response to the prosecutor's leading questions, which the court allowed over defense counsel's objection, C.H. said that Hart had touched her breasts; that she talked to Stump about the experience; and, specifically, that she had told Stump about an incident that occurred in the shower. C.H. was unable to continue with her testimony, and the district judge adjourned court for the day.

On the second day of Hart's trial, C.H. again returned to the stand and testified about an incident that occurred when she was in "sixth or seventh grade," age "13 or 14." She was in the shower, and Hart came into the bathroom, opened the shower curtain, reached in, and touched her breast. She testified that this touching had been happening for a couple of years, but she did not tell anyone about it until later.

In response to defense counsel's question on cross-examination about whom C.H. first told about the touching, she said that "somebody had said something . . . to the [Caney, Kansas,] police . . . because [in 2007] they came and asked us about it, me and my little sister, [D.M.]. But we both said that nothing happened. We didn't want any of this to come up." C.H. testified that later Brown asked C.H. if anything had happened, because N.B. had told Brown "stuff." Defense counsel asked follow-up questions about C.H.'s younger half-sister, D.M., and about other individuals who

were living with her or watching over her. Defense counsel also asked about a disagreement between C.H. and her father over a boyfriend of C.H., which resulted in C.H. moving out of her father's house. Very shortly after this disagreement, C.H. had been interviewed by Stump. Defense counsel also succeeded in highlighting that the charged conduct was alleged to have occurred in 2006, and C.H. had been born in 1990.

On redirect, the prosecutor attempted to elicit more information from C.H. about D.M., but the court sustained a defense objection. C.H. testified that she made the decision to tell police what had happened to her because she learned that Stacy suspected something similar was happening to a younger sibling.

Brown testified that, on one occasion at Hart's house, N.B. called out for help from the bedroom and Hart went to assist her. Brown walked through the house and saw defendant helping N.B. up from behind, "but both of his hands were on her breasts." Brown talked to N.B. but did not tell anyone else, at least "not until all of this came out with [K.H.]." There was no further reference during trial to K.H.

Stump testified about the Advocacy Center and about interviewing techniques. She confirmed that she had interviewed C.H. and N.B. in May 2008, and that both girls had alleged that Hart fondled them.

When the State rested its case, defense counsel sought a directed verdict based on insufficiency of the evidence and two violations of the court's K.S.A. 60-455 order—C.H.'s reference to D.M. and Brown's reference to K.H. The State moved to amend Count I of its complaint to state that the alleged incident with C.H. occurred sometime from January 2005 through July 2005, when C.H. was 14. Defendant did not object to the amendment, stating "it makes no difference in what my client is charged with, except just changes the time frame."

The district judge denied the defense motion for directed verdict. He ruled that the evidence was sufficient to go to the jury, and he determined that the inadvertent mentions of D.M. and K.H. did not prejudice Hart. In addition, the judge indicated that

he expected to give a limiting instruction on other bad acts evidence that would cure any error.

The State briefly reopened its case to present the testimony of Cash Kimple of the Sedan, Kansas, Police Department. Kimple testified that he was present at C.H.'s 2007 interview in which she denied that anything had happened.

Hart took the stand in his defense, and he testified about his job as a truck driver, his marriage to Stacy, and their children and his other children. He testified that, when he and Stacy divorced, he agreed that she should have residential custody of the children because of the nature of his job. But he became concerned about a perceived lack of discipline and told Stacy she needed to get some "structure" or he would seek residential custody of the children. Shortly after that, Hart said, personnel from what was then called the Kansas Department of Social and Rehabilitation Services (SRS) began questioning him about physical abuse of his sons. This investigation, he said, was dropped because there was no evidence to support the allegations. Then, in May 2008, Hart was arrested on the charges in this case. He denied ever having committed the charged acts.

Hart also presented testimony from Cathleen Hart, his brother's wife. She testified that she took C.H. to be interviewed by Caney police in 2007. On the way home, when she asked C.H. if her dad had ever touched her inappropriately, C.H. said no and said that any such accusation was a lie.

Hart's mother, Beverly Smith, also took the witness stand during the defense case. She began to testify about photos C.H. had posted on her MySpace page, but the district judge declined to admit the evidence or allow further testimony, ruling that the photos, offered to suggest that C.H. was not an innocent victim, were irrelevant.

During the rebuttal portion of the State's case, Stacy testified about how Hart came to be investigated for physically abusing their sons. Specifically, she testified that she did not initiate a report to SRS. She also testified that Hart did not express any concerns to her about the way she was parenting their children.

At the close of all of the evidence, the State noted that it had inadvertently charged Hart under statutes that did not become applicable until 2006, and it again sought to amend the two counts of aggravated indecent liberties with a child under K.S.A. 21-3504(a)(1)(A) to two counts of indecent liberties with a child under K.S.A. 21-3503, a severity level 5 felony. The defense did not object, and the district judge permitted the amendment.

The complaint alleged that Hart committed the crimes only with the intent to satisfy his own sexual desires. The jury's instruction on the elements of indecent liberties was not consistent with the complaint's wording; it provided that the State needed to establish Hart's crimes were committed with the intent to arouse or satisfy the sexual desires of the victim or the defendant or both. There was no defense objection to the wording of the elements instruction.

On the K.S.A. 60-455 limiting instruction, the district judge overruled a defense objection to the addition of nonpattern language, specifically, "inclination or method." Instruction No. 5 told the jury: "Evidence has been admitted tending to prove that the defendant committed a crime other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's motive, intent, plan, lack of mistake or accident, inclination or method."

During the initial portion of the State's closing argument, the prosecutor said: "The difficulty of this regardless of what the parents did or didn't do, or might have done or should have done, is not really what's relevant in this matter. What is relevant in this matter is whether or not you believe [C.H.]. *I think you should.*" (Emphasis added.) Later, discussing N.B.'s decision to come forward, the prosecutor said: "*To me* a legitimate reason for a child to come forward [is to] try to protect somebody else." (Emphasis added). And, finally, during the rebuttal portion of her closing, the prosecutor told the jury: "If you think about [the reasons C.H. and N.B. did not report the previous incidents] and you think about the reason that [they] came forward, *I think and I believe* that . . . there is evidence sufficient to show that these crimes were committed beyond a reasonable doubt." (Emphasis added.)

After the jury found Hart guilty on both counts, he filed a motion for new trial. The motion took issue with the witnesses' references to D.M. and K.H., characterizing them as unduly prejudicial. Hart also challenged the district judge's admission of evidence of his sexual activities with C.H. and N.B. on occasions other than those charged. He argued that Instruction No. 5 was erroneous because it called unfair attention to the K.S.A. 60-455 evidence, and he argued that the district judge erroneously excluded photos of the victims. Hart also filed a second motion for judgment of acquittal, attacking the evidence as insufficient.

The district judge denied both motions and sentenced Hart to the middle of the range of sentences in the Kansas Sentencing Guidelines Act grid box on Count 1 and to the lower of the range of sentences in the grid box for Count 2. The sentences were to run consecutive to one another for a total of 80 months' imprisonment.

*Court of Appeals Review*

Hart asserted eight grounds for relief before the Court of Appeals: (1) insufficient evidence; (2) prosecutorial misconduct; (3) instruction error; (4) error in admission of prior bad acts evidence; (5) error in prior bad acts limiting instruction; (6) cumulative error; (7) error in imposing an aggravated sentence; and (8) error in increasing his sentence based on his criminal history.

The Court of Appeals issued a 42-page opinion affirming Hart's convictions and sentences. *State v. Hart,* 44 Kan. App. 2d 986, 242 P.3d 1230 (2010).

On sufficiency of the evidence, the panel rejected Hart's argument that the evidence did not clearly establish C.H.'s age at the time of the charged incident. 44 Kan. App. 2d at 996.

On prosecutorial misconduct, the panel concluded that two of the three challenged statements were not, in fact, comments on the credibility of a witness, as Hart had argued. Instead, they were comments about reasonable inferences to be drawn from the evidence and were within the wide latitude afforded a prosecutor during closing argument. One comment, however, was outside this latitude: "What is relevant in this matter is whether or not you

believe [C.H.]. I think you should." The State had conceded that this comment was error. The panel concluded that the comment was not reversible: it was not gross and flagrant, did not demonstrate ill will, was isolated, and was balanced by the prosecutor's repeated reminders to the jury of its duty to weigh the evidence and of counsel statements not being evidence. 44 Kan. App. 2d at 1003-04.

Next, the panel addressed defendant's challenge to the instruction for indecent liberties. The complaint in this case alleged that the charged crimes were committed with the intent to satisfy the sexual desires of defendant. The instruction to the jury, however, said the State needed to establish that the crimes were committed with the intent to arouse or satisfy the sexual desires of the victim or defendant or both. The defense did not object to this wording, and the panel concluded that it was not reversible under a clearly erroneous standard. 44 Kan. App. 2d at 1005.

Turning to the admission of the K.S.A. 60-455 evidence, the panel noted that defendant's only contemporaneous objection was made during C.H.'s testimony. Before that, N.B. had already testified about Hart's sexual behavior involving both N.B. and C.H. Despite acknowledging this court's precedent interpreting K.S.A. 60-404 and declining appellate review of evidentiary issues not preserved through objection at trial—"[E]ven if there is an in limine ruling that the evidence is admissible, where an objection to the evidence is not made when it is introduced at trial, the defendant is generally precluded from challenging its admissibility on appeal." 44 Kan. App. 2d at 1008-09 (citing *State v. Carapezza*, 286 Kan. 992, Syl. ¶ 7, 191 P.3d 256 [2008]; *State v. Francis*, 282 Kan. 120, 138, 145 P.3d 48 (2006); *State v. Young*, 14 Kan. App. 2d 21, 37, 784 P.2d 366, *rev. denied* 245 Kan. 788 [1989])—the panel relied on the State's stipulation during oral argument that the defense objection was sufficiently timely to permit it "to get to the legal issue involved in this appeal." 44 Kan. App. 2d at 989, 1010-11.

The panel then engaged in a lengthy discussion of the State's argument that the amendments made to K.S.A. 60-455 in 2009 should be applied in this case. 44 Kan. App. 2d at 1011-22. The panel concluded that the amendments were procedural rather than

substantive; that they should apply because Hart's appeal was pending at the time the amendments took effect; and that the amendments' application would not violate the Ex Post Facto Clause of the United States Constitution. 44 Kan. App. 2d at 1011-17. On the merits of Hart's claim under the amended statute, the panel said: "If Hart had made a timely and specific objection to the evidence of prior bad acts, we would have determined that none of the material facts for which the evidence was offered . . . was in dispute"; that the prior bad acts evidence "was not probative for those facts"; and that any minimal probative value "was significantly outweighed by its prejudicial value." 44 Kan. App. 2d at 1018-19. The panel nevertheless concluded that the evidence was admissible to establish the "relationship of the parties" and to corroborate the victims' testimony. See 44 Kan. App. 2d at 1019-21 (citing *State v. Reyes*, 744 N.W.2d 95, 102-03 [Iowa 2008]). Thus it found no reversible error because the district judge had been right for the wrong reason. 44 Kan. App. 2d at 1021-22.

Despite this discussion, the panel also discussed whether K.S.A. 2009 Supp. 60-455(d) made the evidence admissible to show Hart's propensity to commit the crimes charged. It concluded that the legislature's intent was "very apparent" from the plain language of the amended statute: K.S.A. 60-455(d) did not create an exception to the traditional Kansas prohibition on propensity evidence. 44 Kan. App. 2d at 1022.

The panel then addressed defendant's challenge to the limiting instruction, which it reviewed under a clear error standard. It noted that Hart had objected at trial to the addition of "inclination" as a K.S.A. 60-455 factor, but he had not raised the argument he sought to raise on appeal—that the district court did not properly explain the relationship between the prior bad acts, the K.S.A. 60-455 factors, and the evidence in this case. The panel concluded that the instruction did not need supplemental definition of its terms. 44 Kan. App. 2d at 1026 (citing *State v. Patton*, 33 Kan. App. 2d 391, 396, 102 P.3d 1195 [2004], *rev. denied* 279 Kan. 1009 [2005]). And, regardless, there had been no need for a limiting instruction at all, because the evidence was "admissible independent of any of the factors under K.S.A. 2009 Supp. 60-455(b)." 44 Kan. App. 2d at

1026 (citing, *e.g.*, *State v. Crossman*, 229 Kan. 384, Syl. ¶ 1, 624 P.2d 461 [1981]).

Although it had actually identified two errors, the panel next determined that "the only error in this case," the prosecutor's single comment on C.H.'s believability, could not support reversal of Hart's convictions for cumulative error. 44 Kan. App. 2d at 1027. And, finally, it ruled that neither of Hart's sentencing arguments had merit, under the evidence or legal precedent. 44 Kan. App. 2d at 1027-28.

## DISCUSSION

Before we begin our discussion, we note that Hart's petition for review now raises only seven of the eight issues he advanced before the Court of Appeals. The missing issue, which questioned the use of his criminal history to determine the appropriate sentences, has been abandoned. The following sections of this opinion slightly reorder Hart's remaining seven issues for clarity.

### *Prosecutorial Misconduct*

Hart complains that the italicized portions of the three statements in the State's closing argument that have been set out above constituted improper comments on the credibility of a witness.

It is improper for prosecutors to offer juries their personal opinions on the credibility of witnesses. *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010). Such comments are "unsworn, unchecked testimony, not commentary on the evidence of the case." *State v. Pabst*, 268 Kan. 501, 510, 996 P.2d 321 (2000). Counsel may make statements that draw reasonable inferences from the evidence and "may explain ' "to juries what they should look for in assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses." ' " *State v. Duong*, 292 Kan. 824, 830, 257 P.3d 309 (2011) (quoting *Stone*, 291 Kan. at 19 [citation omitted]). Particularly when a case turns on which of two conflicting stories is true, parties may advocate for reasonable inferences based on evidence suggesting that certain testimony is not believable. The jury, however, must be left to draw the ultimate

conclusions on witness credibility. *Duong*, 292 Kan. at 830 (citing *State v. Davis*, 275 Kan. 107, 121, 61 P.3d 701 [2003]).

Appellate review of an allegation of prosecutorial misconduct involving improper comments to the jury requires a two-step analysis, set out in *State v. Tosh*, 278 Kan. 83, Syl. ¶ 1, 91 P.3d 1204 (2004). Under this oft-cited analysis, the court first determines whether the prosecutor's comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. If misconduct is found, the appellate court must determine whether the improper comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Burnett*, 293 Kan. 840, 850, 270 P.3d 1115 (2012); *Tosh*, 278 Kan. at 85.

In the second step of the two-step analysis, the appellate court considers three factors: "(1) whether the misconduct was gross and flagrant, (2) whether the misconduct showed ill will on the prosecutor's part, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors." *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012); *Tosh*, 278 Kan. at 93. " 'None of these three factors is individually controlling. Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, [22,] 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (conclusion beyond a reasonable doubt that the error had little, if any, likelihood of having changed the results of the trial), have been met.' [Citation omitted.]" *State v. McCaslin*, 291 Kan. 697, 715-16, 245 P.3d 1030 (2011).

The State concedes that the prosecutor's first challenged statement was an erroneous expression of personal belief in C.H.'s credibility. Like the Court of Appeals panel, we agree that this concession is correct. Had the prosecutor stopped after saying, "What is relevant in this matter is whether or not you believe C.H.," and not added, "I think you should," error would have been avoided. It was her expression of how she judged C.H.'s credibility that compels us to hold that there was misconduct.

The prosecutor's second and third challenged statements, read in context, do not raise the same degree of concern about unsworn testimony from a representative of the government. Defendant insinuated that C.H. fabricated these allegations because she was angry at defendant. The second challenged comment was preceded by the prosecutor asking the jury to focus on Stump's testimony on child psychology and consider the girls' motives for reporting the abuse. The rebuttal comment came in the context of asking the jury to weigh the girls' credibility, including their stated reasons for delay in coming forward, against defendant's credibility. Stump's testimony had suggested, as the prosecutor pointed out, that children are often reluctant to disclose abuse. We view the second and third challenged comments as permissible remarks based on reasonable inferences that could be drawn from the evidence.

As stated, to determine whether the prosecutorial misconduct we detect in the first statement is reversible, we first examine whether the statement was gross and flagrant. The isolated comment, uttered among several appropriately phrased, was not gross and flagrant. The prosecutor correctly advised the jury that her job was to "try to summarize what . . . I want you to consider when you go back into the jury room and make your deliberations," and "[w]hat is relevant in this matter is whether or not you believe [C.H.]." She reminded the jury that her statements were not evidence, and said, "You are weighing the credibility of the witnesses. Thinking about their reasons. Thinking about the defense that Mr. Hart has put on." These statements mitigated any damage that could have arisen out of the prosecutor's mistake; they reinforced the jury's role as sole arbiter of credibility and factual findings. They also persuade us that the prosecutor's momentary lapse does not demonstrate ill will, and the lapse did not affect or contribute to the result of Hart's trial in light of the entire record. This means that Hart's convictions are not reversible on the grounds of prosecutorial misconduct. The error was harmless under either the state standard in K.S.A. 60-261 (error harmless unless refusal to grant new trial inconsistent with substantial justice) or the federal constitutional standard of *Chapman v. California*, 386 U.S. 18, 22-

24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (harmless error where, beyond a reasonable doubt, error had little, if any, likelihood of having changed result of trial), both of which we have applied in prosecutorial misconduct cases. See *Tosh,* 278 Kan. at 96-98; accord *State v. Ward,* 542 Kan. 541, Syl. ¶¶ 5-6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

## *Overbreadth of Elements Instruction*

Because Hart did not object to the wording of the elements instruction at trial, he is entitled to reversal on that ground only if the instruction qualified as clearly erroneous. See K.S.A. 22-3414(3).

When presented with a claim that a jury instruction was clearly erroneous, we first determine whether the instruction was erroneous. See *State v. Trujillo,* 296 Kan. 625, Syl. ¶ 1, 294 P.3d 281 (2013). This court asks whether the instruction was both factually and legally appropriate. See *Trujillo,* 296 Kan. at 630-31. These are easy calls here, because of the instruction's obvious overbreadth when compared with the language of the charging document. An overbroad instruction is erroneous because the charging instrument sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect against conviction based on facts not contemplated in the accusation. See *State v. Trautloff,* 289 Kan. 793, 802-03, 217 P.3d 15 (2009).

In order for an instruction to qualify as *clearly* erroneous, more is required. We must be firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. See *Trujillo,* 296 Kan. at 630-31.

In *Trautloff,* decided before our recent clarification of the clearly erroneous standard in *Trujillo,* we reversed one of the defendant's convictions for sexual exploitation of a child because of overbreadth of a jury instruction on the crime's elements. The State had charged Melvin Trautloff with "displaying" an offending photograph or video of a child, but the instruction allowed the jury to convict Trautloff of "displaying, procuring or producing" such a photograph or video. At Trautloff's trial, the evidence of "procuring" or

"producing" was direct and overwhelming, while the evidence of "displaying" was minimal and circumstantial. We concluded that, under those circumstances, Trautloff's substantial rights had been prejudiced by the instruction. *Trautloff*, 289 Kan. at 802-03.

Likewise, in *State v. Wade*, 284 Kan. 527, 161 P.3d 704 (2007), the State charged Morgan Wade with aggravated burglary without alleging the intended felony upon which the charge was predicated. It cured this defect by advising the court and defense that it intended to rely upon first-degree premeditated murder as the underlying felony. At trial, however, after the defendant had testified, the jury was instructed that the underlying felony could be premeditated murder or aggravated assault. On appeal, this court concluded that the broader jury instruction prejudiced Wade because the State had proceeded in its case-in-chief only on the theory that Wade intended to commit premeditated murder; the alternate theory that he lacked premeditated intent to kill and meant only to frighten surfaced only after he had essentially admitted during his testimony that he committed an aggravated assault. *Wade*, 284 Kan. at 537.

This case is distinguishable from both *Trautloff* and *Wade*. Although the *Trautloff* decision did not set forth explicitly how the defendant was unduly prejudiced by the broader instruction, the prejudice clearly lay in lack of notice about the accusation that must be defended. In *Wade*, we specifically articulated this concern. See 284 Kan. at 536 ("[w]here the State falters is in its assessment of the surprise and misdirection created by its erroneous instruction"); see also *City of Arkansas City v. Sybrant*, 44 Kan. App. 2d 891, 898-99, 241 P.3d 581 (2010) (discussing *Wade*; *Trautloff*; noting overbroad instruction fails to give notice of conduct forming basis of offense, defendant prejudiced).

Here, Hart's ability to prepare and present a defense was not compromised by the erroneously overbroad elements instruction. There was no evidence presented by either side that would suggest Hart's conduct was responsive to the victims' desires. Hart was not lured into presenting a defense that sealed a conviction on an alternate State theory that the girls had initiated or provoked the sexual contact. Rather, he generally denied that any sexual contact

took place, and his testimony merely suggested motives for the victims or his ex-wife to fabricate the allegations against him. This was not, as in Wade's case, "trial by ambush," *Wade*, 284 Kan. at 541, and the error in the instruction does not qualify as clearly erroneous or require reversal.

*Admission of K.S.A. 60-455 Evidence*

Hart's appellate challenge to the admission of K.S.A. 60-455 evidence focuses only on the testimony about uncharged sexual victimization of C.H. and N.B. It does not concern the witnesses' brief mentions of D.M. and K.H.

This case was tried under the version of K.S.A. 60-455 in effect at the time, that is, the version that predated a 2009 amendment to the statute. "To assess whether a trial error occurred, an appellate court applies the statutory law on evidence as it was at the time." *State v. Young*, No. 102,121, 2012 WL 401600, at *5 (Kan. App. 2012) (unpublished opinion); see, *e.g.*, *Landgraf v. USI Film Products*, 511 U.S. 244, 275 n.29, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994). The Court of Appeals panel's failure to follow this rule renders all that it said regarding the interpretation and application of the amended statute erroneous; it has no force or effect as precedent.

Hart's advancement of this appellate claim of error also exists under a preservation cloud. His only contemporaneous trial objection sufficient to meet this court's interpretation of K.S.A. 60-404 came during C.H.'s testimony. Before that, N.B. had already testified about Hart's uncharged sexual abuse of both herself and C.H. Ordinarily, under such circumstances, we would decline to address the merits of a defendant's claim as unpreserved. See, *e.g.*, *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010); *State v. King*, 288 Kan. 333, 348-49, 204 P.3d 585 (2009). Here, however, presumably because the State hoped to use this case as a platform for a definitive interpretation of the amended statute, it urged us to permit it to stipulate to Hart's preservation of his appellate claim. This is an unorthodox approach. But, because we have previously recognized that the preservation requirement is a prudential rather than jurisdictional bar to appellate review, see *State v. Gaona*, 293

Kan. 930, 956, 270 P.3d 1165 (2012), we will allow it here. We therefore move to analysis of the district judge's decision to admit evidence of uncharged sexual abuse of C.H. and N.B. under K.S.A. 60-455 as it existed at the time of Hart's trial.

Then, the admission of evidence of other crimes or civil wrongs was guided by a multistep analysis, set out as follows: First, the district court must determine whether the evidence is relevant to prove a material fact, *e.g.*, whether the evidence concerns intent, motive, knowledge, or identity. Appellate review for materiality is de novo. The court must then determine whether the material fact is in dispute and ensure that the evidence is probative of the disputed material fact. Appellate courts review the district court's determination of probative value for abuse of discretion. Next, the district court must determine whether the probative value of the evidence outweighs the potential for creating undue prejudice. Appellate review of this determination is also for abuse of discretion. Finally, if the district court judge decides to admit the evidence, he or she must give a limiting instruction notifying the jury of the specific purpose for the admission of the evidence. *State v. Riojas*, 288 Kan. 379, 383, 204 P.3d 578 (2009). We have held that the list of material facts in K.S.A. 60-455 is exemplary rather than exclusive. *State v. Gunby*, 282 Kan. 39, 56, 144 P.3d 647 (2006).

Here, the district judge ruled that evidence of uncharged acts involving C.H. and N.B. were admissible to prove "motive, intent, plan," and "lack of mistake or accident," all of which were material facts listed under the statute. The district judge also admitted the evidence to prove "inclination" or "method." Despite at least one case predating court interpretation of K.S.A. 60-455 that allowed admission of evidence of a defendant's uncharged bad behavior to demonstrate "inclination" to commit the crime at issue, see *State v. Poulos*, 196 Kan. 287, 291-92, 411 P.2d 689, *cert. denied* 385 U.S. 827 (1966), we believe inclination is synonymous with propensity; and proof of propensity under the version of K.S.A. 60-455 controlling here was categorically prohibited. Thus it was error for the district judge to admit the evidence of uncharged sexual abuse of C.H. and N.B. to prove Hart's inclination to commit the charged crimes. As to "method," we are untroubled. We under-

stand the district judge to have viewed method to mean modus operandi or plan, and Hart's uncharged conduct toward the same victims against whom his charged conduct was directed was strikingly similar. This means the evidence was both material and probative, *i.e.*, relevant and therefore admissible under the controlling version of K.S.A. 60-455. See *State v. Prine*, 287 Kan. 713, 735-36, 200 P.3d 1 (2009).

The next question is whether the district judge's erroneous justification for admitting K.S.A. 60-455 evidence to prove inclination requires reversal of Hart's convictions. It is clear that it does not. Simply put, the evidence admitted to show inclination was no different from the evidence admitted to show motive, intent, plan, lack of mistake or accident, or method. In other words, even if the judge had evaluated admissibility for inclination and reached an opposite conclusion, the evidence still would have come in for these other permissible purposes. In these circumstances, the judge's reasoning error regarding inclination did no harm.

*Limiting Instruction for K.S.A. 60-455 Evidence*

Hart also challenges the limiting instruction given by the district judge to guide the jury's consideration of the admitted K.S.A. 60-455 evidence. He does not, however, focus on the instruction's inclusion of inclination, as he did before the district judge. Instead, he argues that the district judge was obligated to define each of the factors for which the jury could consider the evidence, *i.e.*, motive, intent, plan, lack of mistake or accident, inclination or method. Hart's shift in argument means that we do not need to examine the potential reversibility of the improper inclusion of inclination in the instruction's language. See *State v. Wilson*, 295 Kan. 605, 620, 289 P.3d 1082 (2012) (overbroad K.S.A. 60-455 instruction not necessarily reversible error). We need examine only whether the instruction was clearly erroneous for failure to include the definitions Hart now asserts are essential.

This challenge is, in essence, an argument that the instructions as given were legally inappropriate. But Hart cites no law to support his argument, and we have not previously required definitions of the material facts K.S.A. 60-455 evidence is intended to prove.

See PIK Crim. 3d 52.06. We do not intend to start now. We are not persuaded that members of the jury would have rendered a different verdict if the definitions Hart advocates for had been included in the limiting instruction; thus the instruction does not qualify as clearly erroneous.

*Sufficiency of the Evidence*

Hart also contends that there was insufficient evidence to convict him of indecent liberties with C.H., because her age of 14 or 15 was not demonstrated. He argues that C.H. clearly testified that the acts occurred in the spring of 2004 when she was 13 years old.

The record does not support Hart's absolutist position. As noted by the Court of Appeals panel, C.H.'s testimony on her age was equivocal. She testified that she could have been 14 at the time the charged incident occurred; she could not remember the year that the incident took place.

This court is not charged with reweighing the evidence or judging the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). Based on all of the evidence of C.H.'s age, viewed most favorably to the State, a rational factfinder could have concluded that she was 14 or 15 years old at the time of the charged crime. See *Hall*, 292 Kan. at 858 (standard of review for claim evidence insufficient requires evidence to be examined in light most favorable to prosecution). Hart's argument to the contrary fails.

*Cumulative Error*

We have identified three errors: one instance of prosecutorial misconduct in closing argument, the elements instruction's overbreadth, and the district judge's faulty reasoning on admission of K.S.A. 60-455 evidence to prove Hart's "inclination" to commit the charged crimes. Hart asserts that he is entitled to reversal for cumulative error: Even if none of the errors is reversible on its own, they combined to require that remedy.

Cumulative error, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may

be found under the cumulative error doctrine if the evidence against the defendant is overwhelming. *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009).

For reasons we have already explained above, each of the identified errors was relatively minor. Any negligible prejudicial effect arising out of one bore no relation to and did not compound any negligible prejudicial effect arising out of either or both of the remaining two. Although the evidence against Hart cannot be characterized as overwhelming, we conclude that the three identified errors did not work together to cause substantial prejudice or deny him a fair trial. There were two victims who testified to similar sexual abuse; they corroborated each other; and the story of one was further corroborated by an eyewitness. The jury had ample opportunity to evaluate the credibility of the victims and the other State witnesses. The jury also had ample opportunity to accept Hart's defense, which questioned the motives underlying the sexual abuse allegations. We reject Hart's claim that he is entitled to reversal for cumulative error.

*Sentencing*

Hart's remaining sentencing challenge relies upon *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to argue that the district judge erred by imposing the high number in the Kansas sentencing guidelines grid box without having aggravating factors proven to a jury beyond a reasonable doubt.

The record does not support Hart's challenge. He received the mid-level sentence for Count 1 and the low-level sentence for Count 2. Even if this argument had merit in the abstract, which it does not, see *State v. Johnson*, 286 Kan. 824, 851-52, 190 P.3d 207 (2008), we would not apply the rule to Hart.

## CONCLUSION

Because we hold that no reversible error occurred in this case, we affirm defendant Randy Dean Hart's convictions and sentences for indecent liberties with a child. The judgment of the district court is affirmed. The outcome arrived at by the Court of Appeals panel is affirmed; its rationale based on its interpretation and ap-

plication of K.S.A. 2009 Supp. 60-455 was error and has no force or effect.