NOT DESIGNATED FOR PUBLICATION

No. 118,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ELIZABETH ANN O'CONNOR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed April 26, 2019. Reversed and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER, J., and STUTZMAN, S.J.

PER CURIAM: A jury convicted Elizabeth O'Connor of aggravated battery against her ex-boyfriend, T.C. She appeals, arguing that jury instruction errors require reversal. O'Connor is correct that the trial court erred by allowing the jury to convict her under a lesser included instruction that went beyond the means charged in the State's complaint. Accordingly, we reverse and remand for a new trial.

1

O'Connor and T.C. have one child together, A.O. A.O. was born in March 2014. From October 2014 to December 2015, the couple lived together in T.C.'s house with A.O. In December 2015, O'Connor moved out of T.C.'s house to find an apartment of her own. After O'Connor moved out, A.O. remained with T.C. The couple had an arrangement where O'Connor could frequently visit A.O. at T.C.'s house; she visited A.O. nearly every day after work. The couple did not have any legal custody orders in place until after the events at issue in this case happened.

On August 21, 2016, O'Connor went to T.C.'s house to visit A.O. At the time, A.O. was two-and-a-half years old. Towards the end of the visit, A.O. and T.C. walked O'Connor to her vehicle so that she could say goodbye to A.O. before leaving. O'Connor's truck was parked on the street by T.C.'s house. O'Connor gave A.O. a kiss goodbye and sat him on her truck's console. When T.C. reached for A.O. to remove him from the truck, O'Connor stated that she was taking A.O.

At this point, T.C. and O'Connor's accounts diverge.

According to T.C., after O'Connor stated she was taking A.O., he grabbed his cell phone to call the police. O'Connor pushed and shoved T.C. out of the doorway of the truck, then shut and locked the door. T.C. went to the back of the truck to get the license plate information. Then he stood in front of the truck while calling the police. With T.C. in front of the truck, O'Connor reversed the truck up the length of the street until she stopped at a "T" intersection. T.C. chased the truck up the street before stepping in front of the truck where it was stopped.

Next, the truck's engine revved, and he took a few steps back. The truck started to move forward, and T.C. stepped to the side to move out of its way. As T.C. moved to the side, the truck's driver-side mirror clipped his left elbow. At no point during the

2

encounter did T.C. see O'Connor buckle A.O. into a car seat, nor did he see A.O. buckled into a car seat.

According to O'Connor, when she told T.C. she was taking A.O., he tried to reach over her and take A.O. She told him to move away from the truck and he refused. Next, he tried to grab her keys and take them out of the ignition. After that, she used her forearm to "block" T.C. out of the truck enough that she could shut and lock the door. After she locked the door, she put A.O. in his car seat in the backseat and buckled him in.

She backed up the length of the street because T.C. was standing in front of her truck with his hands on the hood and did not move when she asked him to. After she reversed up the hill and stopped her truck, T.C. again stood in front of the truck. She again asked him to move, and he did not. Next, she took her foot off the brake and the truck moved forward. She tried to turn the wheels away from T.C. T.C. then moved out of the truck's way, but "as he made his way to the driver's side of [the] truck, he put his left shoulder into [the] mirror." O'Connor claims she did not rev the truck's engine nor accelerate at all until after T.C. hit her truck.

After this encounter, O'Connor drove the truck back down the street before driving out of T.C.'s sight. O'Connor took A.O. to her apartment in Spring Hill.

After O'Connor left, Overland Park police officers arrived at T.C.'s house. T.C. and two neighbors who witnessed the incident gave statements.

Next, Overland Park police asked Spring Hill police to go to O'Connor's apartment and perform a welfare check on A.O. and detain O'Connor until Overland Park police could arrest her. At the apartment, a Spring Hill police officer told O'Connor that Overland Park police would be charging her with aggravated battery. The officer asked

3

O'Connor if she knew what that meant, and she responded "trying to run him down with my truck probably" in a sarcastic tone.

The State charged O'Connor with aggravated battery and later added a charge of misdemeanor child endangerment.

At trial, T.C., O'Connor, both neighbors who witnessed the incident, and law enforcement personnel testified, as did O'Connor's civil attorney.

The jury convicted O'Connor of aggravated battery and found that it was a crime of domestic violence. The trial court sentenced O'Connor to 7 months in prison, but granted probation for a period of 18 months. O'Connor timely appealed.

*Did the Trial Court Commit Reversible Error by Giving the Lesser Included Jury Instruction Under Which the Jury Convicted O'Connor?*

In its amended complaint, the State charged that O'Connor "unlawfully, feloniously and knowingly cause physical contact with another person, to-wit: [T.C.], when done in a rude, insulting or angry manner with a deadly weapon or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

The complaint cited to K.S.A. 2016 Supp. 21-5413 generally, without identifying a particular subsection. The details given in the complaint, however, match K.S.A. 2016 Supp. 21-5413(b)(1)(C), which criminalizes "knowingly causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Violation of K.S.A. 2016 Supp. 21-5413(b)(1)(C) is a level 7 felony. K.S.A. 2016 Supp. 21-5413(g)(2)(B).

4

Over O'Connor's objection, the trial court instructed the jury that it could convict O'Connor under any of four theories of aggravated battery, or of the lesser offense of battery.

The four possible theories of aggravated battery included:

1. "knowingly caused physical contact with [T.C.] in a rude, insulting, or angry manner with a deadly weapon."
2. "knowingly caused physical contact with [T.C.] in any manner whereby great bodily harm, disfigurement or death can be inflicted."
3. "recklessly caused bodily harm to [T.C.] with a deadly weapon."
4. "recklessly caused bodily harm to [T.C.] in a manner whereby great bodily harm, disfigurement or death can be inflicted."

The jury convicted O'Connor under the fourth theory, finding that she "recklessly caused bodily harm to [T.C.] in a manner whereby great bodily harm, disfigurement or death can be inflicted." The instruction under which the jury convicted O'Connor matches K.S.A. 2016 Supp. 21-5413(b)(2)(B), which criminalizes "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Violation of K.S.A. 2016 Supp. 21-5413(b)(2)(B) is a level 8 felony. K.S.A. 2016 Supp. 21-5413(g)(2)(D).

The journal entry of O'Connor's conviction again cites only "21-5413" as the statute under which she was convicted. The journal entry does, however, list her offense as a "level 8" felony, supporting the conclusion that O'Connor was convicted under K.S.A. 2016 Supp. 21-5413(b)(2)(B) and not K.S.A. 2016 Supp. 21-5413(b)(1)(C).

The first issue on appeal is the trial court's decision to give the lesser included offense instruction under which the jury convicted O'Connor. O'Connor argues that the instruction was erroneous because it went beyond the scope of the charges. Moreover,

5

she argues that the error requires reversal because it violated her due process rights. The State first argues that O'Connor failed to object to the instruction and, thus, clear error analysis applies. The State next argues that the instruction was not erroneous or, in the alternative, that even if the instruction was erroneous, it did not violate O'Connor's due process rights.

> "When analyzing jury instruction issues, we follow a three-step process: '(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

We address each of these steps in turn.

*Preservation*

If a party fails to object to a jury instruction below, the instruction is subject to clear error analysis on appeal. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). Here, the State argues that the challenged instruction is subject to clear error analysis because O'Connor failed to object to the instruction below on the same grounds she now raises on appeal. The record shows that the State is incorrect. O'Connor objected at the jury instruction conference to the State's proposed jury instructions. Specifically, she objected to the inclusion of the two "reckless" lesser included aggravated battery instructions. She stated:

> "There is case law on point on this. I believe it's *State v. Charles*, which is a 2016 case, which indicates that the State is not allowed to expand the scope of their case beyond what they've presented so far and what they've charged so far in this case by including these lessers in the jury instructions.

"And so I do have objections to any of the lessers that have been included beyond what is just charged in this—in the complaint."

Accordingly, we determine that O'Connor has preserved this issue for appeal by objecting to the contested instruction below on the same grounds she now asserts on appeal.

*Error*

Having determined that O'Connor preserved this argument, we next determine whether the challenged instruction was erroneous. To do so, this court considers whether the instruction was "legally and factually appropriate, employing an unlimited review of the entire record. [Citation omitted.]" *McLinn*, 307 Kan. at 318.

O'Connor argues that the challenged instruction under which she was convicted was legally inappropriate because it was "overbroad" and "improperly expanded the possible actus reus to include uncharged acts."

In both its original and amended complaints, the State charged that O'Connor "unlawfully, feloniously and knowingly cause[d] physical contact with another person, to-wit: [T.C.], when done in a rude, insulting or angry manner with a deadly weapon or in any manner whereby great bodily harm, disfigurement or death can be inflicted."

While the State cited only to K.S.A. 21-5413 generally, the allegations in the complaint comport with K.S.A. 2016 Supp. 21-5413(b)(1)(C), which criminalizes "knowingly causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Violation of K.S.A. 2016 Supp. 21-5413(b)(1)(C) is a level 7 felony. K.S.A. 2016 Supp. 21-5413(g)(2)(B).

7

The trial court instructed the jury that it could convict O'Connor under any of four aggravated battery theories or of the lesser crime of battery. The jury convicted O'Connor under the fourth theory, finding that she "recklessly caused bodily harm to [T.C.] in a manner whereby great bodily harm, disfigurement or death can be inflicted." The instruction under which the jury convicted O'Connor matches K.S.A. 2016 Supp. 21-5413(b)(2)(B), which criminalizes "recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Violation of K.S.A. 2016 Supp. 21-5413(b)(2)(B) is a level 8 felony. K.S.A. 2016 Supp. 21-5413(g)(2)(D).

O'Connor argues that the lesser included instruction was overbroad because it exceeded the conduct charged in the complaint. The complaint only alleged that O'Connor "cause[d] physical contact" with T.C., the jury convicted her of "caus[ing] bodily harm" to T.C. She compares this case to *State v. Charles*, 304 Kan. 158, 372 P.3d 1109 (2016), *abrogated on other grounds by State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017).

In *Charles*, our Supreme Court held that the trial court erred by giving a lesser included reckless aggravated battery instruction. 304 Kan. at 168-69. There, the State charged Charles with "intentional aggravated battery, alleging Charles 'unlawfully and intentionally cause[d] bodily harm to another person . . . with a deadly weapon, to-wit: 1995 Nissan Pathfinder." 304 Kan. at 162. At trial, however, the trial court instructed the jury that it could convict Charles of the "lesser included offense of aggravated battery reckless" if it found that Charles "'recklessly caused bodily harm to another person with a deadly weapon, to-wit: a car, *or in any manner whereby great bodily harm, disfigurement or death can be inflicted*.'" 304 Kan. at 162. The jury convicted Charles of this lesser included offense.

8

On appeal, Charles argued that the lesser included instruction was error because it was broader than the specific allegations leveled in the complaint. On the other hand, the complaint only charged Charles with inflicting bodily harm with an SUV, the trial court instructed the jury that it could convict him of the lesser included offense if it found he caused bodily harm "'in any manner whereby great bodily harm, disfigurement or death can be inflicted.'" 304 Kan. at 162.

Our Supreme Court reviewed the relevant authority, including the following from *State v. Hart*, 297 Kan. 494, 508, 301 P.3d 1279 (2013):

"An overbroad instruction is erroneous because the charging instrument sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect against conviction based on facts not contemplated in the accusation."

Next, our Supreme Court held that the trial court erred by instructing the jury on the lesser included offense because the instruction improperly expanded the acts charged in the complaint. *Charles*, 304 Kan. at 168-69. Our Supreme Court noted:

"The State was not required to be as specific as it was in its aggravated battery charge against Charles. It need not have alleged that Charles committed severity level 7 intentional aggravated battery only by causing bodily harm to [the victim] by using his SUV as a deadly weapon. But, having chosen that path, it assumed the burden of proving the elements of exactly it or its lesser included reckless version beyond a reasonable doubt. The district judge erred by expanding the lesser included instruction so that Charles could be convicted if the jury found beyond a reasonable doubt that he inflicted bodily harm on [the victim] 'in any manner whereby great bodily harm, disfigurement or death can be inflicted.' The lesser included offense instruction was neither factually nor legally appropriate." *Charles*, 304 Kan. at 168-69.

9

Having determined that the instruction was erroneous, our Supreme Court went on to engage in clear error analysis to determine whether reversal was required because Charles did not object to the lesser included instruction below. 304 Kan. at 169.

O'Connor argues that the trial court here committed the same error as the trial court in *Charles*, that is, using a lesser included instruction to improperly expand on the conduct charged in the complaint. She argues that the State specifically charged her with causing "physical contact" with T.C. but the trial court impermissibly expanded on this charge by allowing the jury to convict her of "caus[ing] bodily harm." The State, on the other hand, argues that the lesser included instruction was not error because "the actus [reus] for 'physical contact' and 'bodily harm' are the same . . . . The alternatives were simply different levels of harm." The State provides no authority for its claim that "physical contact" and "bodily harm" are varying degrees of the same act.

We determine that O'Connor's argument is correct and find that the challenged lesser included instruction was error because "[a] jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous." *State v. McClelland*, 301 Kan. 815, 828, 347 P.3d 211 (2015). Similarly, as in *Charles*, the State here boxed itself into proving O'Connor committed aggravated battery by making physical contact because it limited itself accordingly in the complaint. "The State is bound by the wording of its complaint and limits itself to pursue only that 'version of the offense' or 'theory' of the case at trial." *State v. Haberlein*, 296 Kan. 195, 210, 290 P.3d 640 (2012). As discussed earlier, our Supreme Court has held that the purpose of a charging document is to put the defendant on notice of the charges against him or her so that he or she may formulate a defense "to meet that accusation" and "protect against conviction based on facts not contemplated in the accusation." *Hart*, 297 Kan. at 508.

Charging O'Connor with making physical contact did not put her on notice that she could be convicted of causing bodily harm; "bodily harm" ostensibly requires more

10

evidence to prove than mere "physical contact." For example, for a jury to find that a defendant caused "bodily harm," they would likely have to hear evidence detailing the victim's injuries. On the other hand, for a jury to convict a defendant for making "physical contact," they would only need to hear evidence that the defendant in some way made physical contact with the victim. While a complaint alleging "bodily harm" likely puts a defendant on notice that they could be found guilty by way of "physical contact" because the physical contact of aggravated battery is likely a necessary precursor of the bodily harm, such is not necessarily true of the inverse. For example, you can have physical contact with somebody without causing or resulting in bodily harm. Bodily harm requires some kind of injury to the body.

Accordingly, because the challenged instruction was broader than the allegation made in the complaint against O'Connor, we conclude that the challenged instruction was error. Having concluded that the instruction was error, we must next determine if the error requires reversal of O'Connor's conviction.

*Reversal*

Because O'Connor objected to the contested jury instruction below, we apply the harmless error test set out in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012), to determine if the error requires reversal. See *State v. Dominguez*, 299 Kan. 567, 573-74, 328 P.3d 1094 (2014). Under the *Ward* harmless error test, the State must prove "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *Ward*, 292 Kan. at 569.

O'Connor correctly points out that under this standard, there is no way that the State could prevail. The jury here convicted O'Connor under the erroneous instruction; thus, the erroneous instruction necessarily affected the jury's verdict. This is not a

11

situation where the trial court erroneously combined charged and uncharged means under a single jury instruction, leaving the appellate court to determine whether the jury relied on the charged or uncharged means. Rather, the jury here convicted O'Connor exclusively under the erroneous instruction containing the uncharged element.

The State, on the other hand, argues that O'Connor's analysis is incorrect. The State claims that the proper analysis is to ask whether the error negatively affected O'Connor's ability to prepare a defense. The State also cites *Hart* in support of this claim.

There, the State charged that Hart committed indecent liberties "with the intent to satisfy the sexual desires of the defendant." 297 Kan. at 503. The trial court instructed the jury, however, that "the State needed to establish that the crimes were committed with the intent to arouse or satisfy the sexual desires of the victim or defendant or both." 297 Kan. at 503. Our Supreme Court performed clear error review and determined that the overbroad instruction was not clearly erroneous because "Hart's ability to prepare and present a defense was not compromised by the erroneously overbroad elements instruction." 297 Kan. at 509. Our Supreme Court stated the following:

> "There was no evidence presented by either side that would suggest Hart's conduct was responsive to the victims' desires. Hart was not lured into presenting a defense that sealed a conviction on an alternate State theory that the girls had initiated or provoked the sexual contact. Rather, he generally denied that any sexual contact took place, and his testimony merely suggested motives for the victims or his ex-wife to fabricate the allegations against him. This was not . . . 'trial by ambush,' *Wade*, 284 Kan. at 541, and the error in the instruction does not qualify as clearly erroneous or require reversal." 297 Kan. at 509-10.

*Hart*, however, does not support the State's position here. As an initial matter, our Supreme Court in *Hart* applied clear error analysis, not harmless error review, because

Hart failed to object to the instruction below. 297 Kan. at 508. Thus, the *Hart* decision is premised on a much less exacting analysis.

Second, the *Hart* decision differentiated that case from *State v. Trautloff*, 289 Kan. 793, 217 P.3d 15 (2009). In *Hart*, the court stated:

> "In *Trautloff*, . . . [our Supreme Court] reversed one of the defendant's convictions for sexual exploitation of a child because of overbreadth of a jury instruction on the crime's elements. The State had charged Melvin Trautloff with 'displaying' an offending photograph or video of a child, but the instruction allowed the jury to convict Trautloff of 'displaying, procuring or producing' such a photograph or video. At Trautloff's trial, the evidence of 'procuring' or 'producing' was direct and overwhelming, while the evidence of 'displaying' was minimal and circumstantial. We concluded that, under those circumstances, Trautloff's substantial rights had been prejudiced by the instruction. *Trautloff*, 289 Kan. at 802-03." *Hart*, 297 Kan. at 508-09.

This case is far more comparable to *Trautloff* than *Hart*. The prejudice here "clearly lay in the lack of notice about the accusation that must be defended." *Hart*, 297 Kan. at 509. As the State in *Trautloff* failed to put the defendant on notice that he could be convicted for "procuring or producing" a picture of a child engaged in sexually explicit conduct, so too here the State failed to put O'Connor on notice that she could be convicted for causing "bodily harm" to T.C.

Finally, even if we were to apply the State's proposed analysis, O'Connor would nevertheless prevail. The State argues that "O'Connor's theory of defense was that [T.C.] was the aggressor, as he intentionally shoulder-checked her mirror as she drove by . . . . Whether there was 'physical contact' or 'bodily harm,' O'Connor's theory of defense would have remained the same."

The State cannot say with certainty that O'Connor's defense would have remained the same had she been charged with both "physical contact" and "bodily harm." A defendant is entitled to pursue inconsistent defenses. *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016). Further, had the State given O'Connor notice of a "bodily harm" charge, she could have raised a defense either challenging the scope of T.C.'s injuries or suggesting that T.C.'s injuries were preexisting and unrelated to the pair's encounter. Because the State failed to charge O'Connor with causing "bodily harm," O'Connor was foreclosed from formulating a defense tailored to the charge.

Accordingly, we conclude that the challenged instruction was error requiring reversal. We reverse O'Connor's conviction and remand for a new trial consistent with the charges in the State's complaint.

Finally, we observe, based on the complaint in this case, that the misdemeanor battery form of K.S.A. 2016 Supp. 21-5413(a)(2) is the lessor form of the aggravated battery charged under the current complaint. See K.S.A. 2016 Supp. 21-5413(b)(1)(C). See also *State v. Green*, 55 Kan.App.2d 595, Syl. ¶ 5, 419 P.3d 83 (2018).

Reversed and remanded for a new trial.