IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,054

STATE OF KANSAS,
*Appellee*,

v.

MARK SCHEETZ,
*Appellant.*

SYLLABUS BY THE COURT

1.

The contemporaneous objection rule under K.S.A. 60-404 requires a party to make a timely and specific objection at trial to preserve an evidentiary challenge for appellate review. The statute has the practical effect of confining a party's appellate arguments to the grounds presented to the district court.

2.

K.S.A. 60-404 directs that a verdict "shall not" be set aside, or the judgment reversed, based on the erroneous admission of evidence without a contemporaneous objection at trial.

3.

K.S.A. 60-2101(b) provides the Kansas Supreme Court with jurisdiction to vacate any act, order, or judgment of a district court or the Court of Appeals to ensure that such act, order, or judgment is "just, legal and free of abuse."

1

4.

Relevant evidence under K.S.A. 60-401(b) means evidence having any tendency in reason to prove any material fact. Relevancy has both a probative element and a materiality element. Evidence is probative if it has any tendency in reason to prove a fact. Evidence is material if it addresses whether a fact has a legitimate and effective bearing on the decision of the case and is disputed. Our well-established law is that all relevant evidence is admissible unless prohibited by statute, constitutional provision, or court decision.

5.

An appellate court reviews a district court's evidentiary determination on materiality de novo, while it reviews the decision on probative value for abuse of discretion. A district court abuses its discretion when no reasonable person could agree with its decision or when its exercise of discretion is founded on a factual or legal error.

6.

An appellate court reviews prosecutorial error claims by employing a two-step analysis: error and prejudice. To decide error, the court must determine whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case in its attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. Upon finding error, the court must consider whether that error prejudiced the defendant's due process rights to a fair trial.

Review of the judgment of the Court of Appeals in 63 Kan. App. 2d 1, 524 P.3d 424 (2023). Appeal from Norton District Court; PRESTON A. PRATT, judge. Oral argument held September 13, 2023. Opinion filed January 12, 2024. Judgment of the Court of Appeals reversing the district court is reversed on the issues subject to review and is vacated in part. Judgment of the district court is affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Steven J. Obermeier*, assistant solicitor general, argued the cause, and *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: K.S.A. 60-404 requires a party to make a timely and specific objection at trial to preserve an evidentiary challenge for appellate review. The statute has the practical effect of confining a party's appellate arguments to the grounds presented to the district court. It also directs that a verdict "shall not" be set aside, or a judgment reversed, based on the erroneous admission of evidence without a contemporaneous trial objection. Here, the State argues a Court of Appeals panel untethered itself from these statutory commands when reversing a jury verdict convicting Mark Scheetz of aggravated criminal sodomy, rape, sexual exploitation of a child, and victim intimidation. See *State v. Scheetz*, 63 Kan. App. 2d 1, 524 P.3d 424 (2023). We agree with the State, reverse the panel, vacate a portion of its published opinion, and affirm the convictions.

The panel held the cumulative prejudicial effect of various trial errors, including the admission of propensity evidence about other underage girls, denied Scheetz his constitutional right to a fair trial. 63 Kan. App. 2d at 33-36. But it reached that outcome without individually considering the specific trial objection made to each piece of propensity evidence. Instead, it aggregated the objections and treated the propensity evidence generically as a group, which allowed the panel to adopt a novel perspective of K.S.A. 2022 Supp. 60-455(g) on the mistaken belief that the question was "not altogether different from what [Scheetz] argued below." 63 Kan. App. 2d at 10.

3

The panel erred in its preservation analysis, causing it to overstep appellate boundaries to reach questions about K.S.A. 2022 Supp. 60-455(g)'s scope not presented to the district court. Accordingly, we vacate its ruling on those questions. See K.S.A. 60-2101(b). We also reject the panel's relevancy, prosecutorial error, and cumulative error conclusions. We affirm the district court's judgment on the issues subject to our review.

FACTUAL AND PROCEDURAL BACKGROUND

Scheetz lived for about three years with M.C.'s mother beginning around November 2012. In 2019, police met with M.C. as part of another investigation to ask about her interactions with him. She disclosed Scheetz had molested and raped her "[a] lot" when she was 11 to 13 years old. She said the sexual contact occurred "[a]ll the time"—"potentially 75 times."

As a result, the State charged Scheetz with two counts of aggravated criminal sodomy under K.S.A. 2015 Supp. 21-5504(b)(1) (sodomy with a child under 14 years old), two counts of rape under K.S.A. 2015 Supp. 21-5503(a)(3) (sexual intercourse with a child under 14 years old), and sexual exploitation of a child under K.S.A. 2016 Supp. 21-5510(a)(2) (possessing a visual depiction of a child under 18 years old shown engaging in sexually explicit conduct). Later, the State amended its complaint to include a count of intimidating a victim under K.S.A. 2020 Supp. 21-5909(a)(1) (trying to dissuade a victim from testifying at trial with an intent to interfere with the orderly administration of justice) after confiscating a letter Scheetz addressed from jail to M.C.

During an eight-day trial, the State presented 31 witnesses, including M.C., who was 19 by that time. She testified Scheetz was her mother's then boyfriend, and the three lived together for almost three years. She described her mother's frequent drinking, quick temper, and tendency to make her leave the house. She described this as making her life

4

"hell." When the prosecutor asked about her connection with Scheetz at that time, she answered, "He was all I had."

She detailed four separate sexual encounters with Scheetz when she was 11 to 13 years old. First, M.C. had a fight with her mother and ran away one night. Scheetz went looking for her. After he found her, they ended up spending the night at her grandfather's house. The two were in the bedroom, while her grandfather slept in another room. She could not remember specifically what Scheetz told her but remembered he "[j]ust pulled down" his basketball shorts, and she had oral sex with him. Next, she said Scheetz digitally penetrated her vagina on a hunting trip, while he took videos using his iPhone, "probably the [version] 4, maybe the 5." She said Scheetz had a "photo vault" application on his phone, where he stored "all of [their] videos." Third, she testified they had sexual intercourse in the rec room at her mother's house. Finally, she described a time when Scheetz performed oral sex on her in her bedroom.

When she was 13, she moved to her biological father's house in a different city, and never saw Scheetz again. But the two exchanged pictures via Snapchat. Scheetz sent her pictures of his penis, and M.C. sent him naked photos of herself. Years later, when investigators came to her father's house to ask about Scheetz, M.C. told them about the photos on his phone. She also said she would not be surprised "if he still has a pair of [her] panties" because he told her, "He would go down and check [her] panties to see if he could make [her] wet one of those nights."

During a search of Scheetz' residence and vehicle, police seized two phones belonging to Scheetz. His iPhone 5 had an application called "Keepsafe," a password protected vault for storing images separate from where they would normally be on an iPhone. Of those images, M.C. recognized herself in seven sexually explicit photographs using clues like her blanket, pillowcase, navel piercings, and a hand scar. She identified

herself in a picture of a female from the belly button to her breast covered by one of the subject's and one of the female's hands; a picture of a topless female with both of her breasts visible; two pictures of a vagina and a hand with the subject's fingers inserted; a picture of an unclothed female lying on her back touching her vagina with one hand, and her breasts viewable; a picture of the same female's pubic area; and a picture of a female's vagina and anus. Police also found a Crown Royal bag containing six pairs of women's underwear. M.C. did not recognize any as hers, but DNA testing of one sample yielded a major profile consistent with Scheetz and a partial minor profile consistent with M.C., but not consistent with her mother.

M.C. testified about her mother's reaction to Scheetz' and her interactions. She said, "[T]here was a day that Mom was really upset, and she ended upcoming [*sic*] outside and screaming that, 'He's touching my daughter.'" The mother called police and was "scream[ing] at the cops that her boyfriend was raping her daughter." The prosecutor asked what made her mother say that. She responded that one night her mother entered the rec room while M.C. was on top of Scheetz, who saw her mother approaching and immediately threw her off him. The mother asked what they were doing. They said they were in a nipple-pinching game.

To support the victim intimidation charge, the State presented a letter Scheetz addressed to his brother from jail that contained another letter addressed to M.C. Scheetz asked his brother to mail the letter inside to her. This happened while Scheetz awaited trial. The letter to M.C. claimed to be written by an anonymous woman, called "[a] true friend," but appears to be written by Scheetz. It begins with the statement: "I wanted to reach out to you . . . and ask if you were truly aware of the full picture of this situation." Then it discussed the consequences of her testifying and tried to persuade her to drop the case:

6

"You can be his Superhero . . . . . You alone can save him. Even if something ever did occur . . . .

. . . .

"[T]ell them this didn't happen and you don't want to go through with this . . . . [S]o maybe they can get it dismissed before . . . and nobody has to know. . . . You can prevent both yourself and [Scheetz] from a lot of embarrassment, as well as other witnesses being embarrassed. . . . I don't want you to live with the regret of **[Note: statement redacted]** . . . you were involved with something equally."

Scheetz testified in his own defense. As to M.C.'s first allegation, he recalled the night when the two were in her grandfather's bedroom. He said he was in his blue jeans, not basketball shorts. He admitted talking with M.C. on the bed but denied any sexual activity. He made a general denial for the other three incidents. When asked about the time M.C.'s mother accused him of sexual contact with M.C., he said only, that "may have been" since "[i]t was not uncommon for [her mother] to get drunk and talk nonsense." He acknowledged playing a nipple-pinching game with M.C., and that her mother saw them doing it.

Scheetz then addressed his collection of women's underwear. He said he started keeping them during his junior high years. He said not every woman he had been involved with contributed, but some had. He believed one pair of underwear belonged to M.C.'s mother. Neither the defense nor the prosecutor asked him about the photos on his phone or his letter to M.C.

Scheetz called four witnesses who had spent time around M.C. and him. Each generally denied seeing anything inappropriate.

7

The jury convicted Scheetz as charged. The district court sentenced him to life in prison without the possibility of parole for 50 years. He appealed to the Court of Appeals, claiming improperly admitted propensity evidence, prosecutorial error in closing arguments, and cumulative error. The panel reversed his convictions after it found the individually harmless errors had a cumulative effect that deprived him of a fair trial. *Scheetz*, 63 Kan. App. 2d at 33-36.

The State petitioned this court for review, essentially challenging all adverse holdings. Scheetz did not file a cross-petition for review. See Supreme Court Rule 8.03(c)(3) ("The purpose of a cross-petition is to seek review of specific holdings the Court of Appeals decided adversely to the cross-petitioner.") (2023 Kan. S. Ct. R. at 57). Consequently, the panel's determinations against Scheetz are settled. See *State v. Gonzalez*, 307 Kan. 575, 590, 412 P.3d 968 (2018).

Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decision); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

PROPENSITY EVIDENCE AND ISSUE PRESERVATION

K.S.A. 2022 Supp. 60-455 sets out the rules for admitting evidence relating to a person's past wrongdoing. Subsection (a) generally prohibits evidence of a person's crime or civil wrongs on a particular occasion from being used as proof of that person's tendency to commit another crime or civil wrong on a separate occasion. Subsections (b) through (d) provide exceptions to subsection (a)'s general prohibition. This case is about subsection (d), which allows evidence of the defendant committing "another act or offense of sexual misconduct" to be admissible and "considered for its bearing on any

8

matter to which it is relevant and probative" in criminal cases involving sex offenses. K.S.A. 2022 Supp. 60-455(d).

We focus first on subsection (d) and how the term "act or offense of sexual misconduct" is defined under subsection (g) because that was the panel's central emphasis. In the Court of Appeals, Scheetz argued for the first time that the State's propensity evidence was inadmissible under subsection (g), which lists 10 specific types of conduct defining what constitutes an "act or offense of sexual misconduct." He asserted the State's evidence did not satisfy subsection (g)'s enumerative listing, which he argued limited its scope to those examples. The State countered that Scheetz never presented this statutory definition-based claim to the district court, so it was not preserved under K.S.A. 60-404 ("A verdict or finding shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.").

The panel rejected the State's contention. It held Scheetz' definitional "argument on appeal *is not altogether different* from what he argued below." (Emphasis added.) *Scheetz*, 63 Kan. App. 2d at 10. On review, the State faults the panel's preservation analysis, which presents a critical threshold question because K.S.A. 60-404's legislative mandate is clear:

> "K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. The trial judge must be provided the specific objection, so the judge may consider as fully as possible whether the evidence should be admitted. Thus, appellate review is precluded if a party objects to evidence on one ground at trial but then asserts a different ground on appeal." *State v. Reed*, 300 Kan. 494, Syl. ¶ 6, 332 P.3d 172 (2014).

9

As another Court of Appeals panel recently observed and correctly understood, "K.S.A. 60-404 directs that the verdict 'shall not' be set aside, nor the judgment reversed, without a timely [and specific] objection." *State v. Clingerman*, 63 Kan. App. 2d 682, 688, 536 P.3d 892 (2023).

*Additional factual and procedural background*

The State filed a pretrial motion to admit propensity evidence, and the court conducted an evidentiary hearing to consider it. The State sought the testimony from three underage girls, G.H., H.T., and C.K., as well as Scheetz' internet search history from his iPhones 5 and 8. The State argued: "[W]e think it shows a clear pattern of his propensity for sexual contact with underage females, and that it would be relevant for the jury to understand that the charged counts in this case as currently charged aren't isolated incidents with one victim."

G.H.'s testimony demonstrated she knew Scheetz through her father who worked with Scheetz, and that Scheetz was like an uncle to her. One time, Scheetz sent her a picture of his penis. She believed he intended to send the picture to someone else because it came with a text reading something like "waiting for you to come over." Then, he immediately sent another text stating it was an accident and asked her not to tell her father. G.H. said this happened in 2018 when she was 11 or 12 years old.

H.T. testified she knew Scheetz through M.C. He had messaged H.T. on Snapchat and offered to fill up her Jeep with gas and buy her alcohol if she would go over to his hotel and hang out with him. She declined. Later, Scheetz sent her two pictures of his penis via Snapchat. She was 16 at the time.

10

C.K. testified she met Scheetz when she was 16. At the time, she lived with G.H. and her uncle, G.H.'s father. One day, Scheetz asked her to send him a nude picture, which she refused. He then sent her his nude photo, so she blocked him on Snapchat. He messaged her on Facebook, asking why she had blocked him. A screenshot of this exchange had statements: "You actually blocked me?"; "Like sending me nudes, and . . . you asking me I just don't think it's right!" C.K. reported this to the KBI.

Scheetz' internet search history from his iPhones 5 and 8 displayed search terms he had entered and the titles of the websites he visited. Of those, some were general—e.g., "When to Hunt," "what causes grey hair," "lansing pizza hut." But others were sexually explicit—e.g., "My stepdad finally touched me," "my step dad forced himself inside of me," "Sex At 9 years old," "I Enjoyed Being Molested," "Step Dad started blowing me at age 5," "Why Incest is Best," "Free Little Step Daughter Porn Videos," and "Incest and more incest!!!"

Defense counsel opposed the underage girls' testimony stating:

"[A]s to the information from [G.H.], we would ask the Court to deny the State the opportunity to use that. *The testimony was very non-specific*. There wasn't any detail concerning what she allegedly saw, and there wasn't anything to really back up what they said. Like I said, it was very non-specific, plus there was the statement that it was done by mistake. [. . . Also,] there was no description of what the picture was that she received.

"As to [H.T.], *she also was very non-specific* in her statements about what she supposedly saw. . . . She said that he did offer to give her gas or alcohol going to a hotel, but *it doesn't indicate any kind of sexual content* or any kind of sexual behavior on the part of the defendant or on the part of [H.T.] So I ask the Court to deny any information or any statements from her.

. . . .

11

"[C.K.] does give specific sexual content, but, . . . again, those incidents she talks about happened . . . after the incidents that the State alleges occurred and that we're going to trial on, *so they're not prior bad acts*." (Emphases added.)

About the internet search exhibits, defense counsel argued:

"[T]he [internet search history] information . . . was after the fact. This isn't like prior bad acts. . . . In fact, they were like 2017 and 2018, where the incidents with [M.C.] happened before that . . . . So these aren't prior bad acts, *these are acts that occurred after the fact of the crimes alleged to have occurred with* [*M.C.*]." (Emphasis added.)

Scheetz' individual grounds for pretrial objection can be summarized as follows: G.H.'s allegation lacked specificity; H.T.'s allegation lacked specificity and sexual content; C.K.'s allegation was not prior bad acts; and the internet search history was not a prior act. C.f. *State v. Sieg*, 315 Kan. 526, 533, 509 P.3d 535 (2022) (to qualify as a prior bad act under K.S.A. 60-455, the statute requires "specificity" from the evidence).

The court granted the State's motion to admit this evidence. And while offering a rationale for rejecting Scheetz' argument that the admissible bad acts had to occur before the charged offense, the court dismissed the remaining grounds without explanation. The court said:

"60-455 is often referred to as prior bad acts, but that's just kind of a shorthand way of referring to it. There is nothing in the statute that says they have to occur prior to the charged crime. Actually, the statute says that evidence that a person committed a crime or civil wrong on some specific occasion, and so I did note that the charged crimes are several years ago, 2012, 2013, I don't have the Complaint right in front of me, but they are several years old, whereas the alleged bad acts are after that.

12

"But regarding [defense counsel's] argument that these alleged bad acts were not prior bad acts, that's not required by statute.

"Also, the statute is fairly clear that if it is a non-sex crime, then pretty tight on not allowing this type of evidence. However, for a sex crime, it's pretty broad on allowing this type of evidence. For a sex offense, then the prior acts or the other evidence of other crimes or other civil wrongs are admissible, if they go to propensity or any other matter which is relative and probative.

"My finding is that the request contained in the State's motion is both relevant and probative to the charged crimes. So the information that is contained within the motion is allowed under 60-455 in this particular case."

At trial, the State presented the propensity evidence to the jury. Scheetz made a series of objections related to the girls' allegations—all were timely but merely renewed the same pretrial objections made earlier without adding new grounds. Sometimes, Scheetz made only general objections, such as, "Objection, Your Honor, 60-455 information."

But as to the search history, defense counsel not only renewed the earlier pretrial objection (not a prior bad act) but added three more: the evidence was irrelevant; it was "more inflammatory than probative"; and it contained nothing illegal, suggesting they did not qualify as an "act or offense of sexual misconduct." As to the inflammatory argument, we note K.S.A. 60-445 allows a trial judge to "exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party." The court overruled the search history objection, by stating:

"I did notice when I looked through these over the weekend that on [Exhibit] 122, which is excerpts from the iPhone 5, those searches are primarily from October, November of 2017, in that area; and in State's [Exhibit] 123, searches from the iPhone 8,

13

those are from 2019, generally in February of 2019. And some in March, also. So substantially after [M.C.] moved to Wichita in 2015.

"But under 60-455, it doesn't have to be prior conduct, it can be subsequent conduct and can also show propensity. And, of course, relevance is always an issue, whether it's under 60-455 or any other evidentiary rule, and so the evidence has to be relevant.

"But in this case, those searches, I think, are relevant to show that Mr. Scheetz's sexual attraction to young girls, even if they might be websites for girls over the age of 18, but appear young or at least in the title young girls, and his sexual attraction for stepfather-stepdaughter or other type of incestuous sexual contact. So it is relevant to show those issues.

"So I do find that under 60-455, it should be allowed and that it also is relevant, even though it's several years after the alleged conduct in this case. So the objection on both of those are overruled."

*Standard of review*

"Preservation is a question of law subject to plenary review." *State v. Campbell*, 308 Kan. 763, 770, 423 P.3d 539 (2018).

*Discussion*

The essential question is whether Scheetz gave the district court an opportunity to rule on his appellate claim that the propensity evidence did not meet subsection (g)'s definition because its listed examples were exhaustive rather than illustrative. See *State v. Alfaro-Valleda*, 314 Kan. 526, 533, 502 P.3d 66 (2022) (for a defendant's appellate argument related to trial evidence's admissibility, the defendant must give the district

14

court an "opportunity to consider the objections and to rule on them"). A review of the record shows the district court never had that chance.

The panel decided Scheetz properly preserved for appeal his new definitional challenges to subsection (g). It reasoned: (1) he "actively litigated the admissibility of this evidence under K.S.A. 2021 Supp. 60-455(d)"; (2) he "disputed the application of that subsection"; and (3) although he did not mention subsection (g), "the general theme underlying his objections" covered his definitional challenge. *Scheetz*, 63 Kan. App. 2d at 10. It then concluded his "argument on appeal is not altogether different from what he argued below" and proceeded to delve into the merits. 63 Kan. App. 2d at 10.

The panel's rationale commits at least three obvious errors. First, it fails to individually assess each piece of evidence and its associated objection specifically. Instead, the panel improperly considered the evidence collectively for K.S.A. 60-404 purposes. Second, it accepts entirely new legal questions not advanced to the district court, specifically: (1) whether the challenged evidence satisfied the statute's subsection (g) definitional requirements; and (2) what the meaning of the term "includes" is, as used in the statute. Third, the panel did not review the district court's ruling and analysis with particularity; instead, it examined the evidence de novo. See *State v. Freeman*, 195 Kan. 561, 564, 408 P.2d 612 (1965) ("[K.S.A. 60-404] has a legitimate purpose in the appellate court, whose function is that of review rather than trial de novo."). Its approach disregards statutory mandates.

Preserving an evidentiary challenge under K.S.A. 60-404 requires a timely and specific objection. It is not optional. The specificity requirement can be explained this way:

15

"The Kansas Legislature has established the rule for evidentiary objections by statute. The legislature, not this court, requires that the objection at the trial court to the admission of evidence 'make clear the *specific* ground of objection.' Otherwise, the verdict cannot be set aside. Under the separation of powers doctrine, this court has no constitutional authority to essentially negate the legislature's decision to require a specific ground of objection in the trial court by then allowing a different objection to be argued in the appellate court. [Citations omitted.]" *State v. McCaslin*, 291 Kan. 697, 709-10, 245 P.3d 1030 (2011), *overruled on other grounds by State v. Astorga*, 299 Kan. 395, 324 P.3d 1046 (2014).

To be sure, "Exceptions exist for raising issues on appellate review without expressing an objection to the trial court, *but K.S.A. 60-404 does not allow those exceptions to come into play in the context of the admissibility of evidence*." (Emphasis added.) *State v. Carter*, 312 Kan. 526, 535, 477 P.3d 1004 (2020). If it stands for anything, K.S.A. 60-404 must mean a party cannot object to evidence on one ground at trial and then substitute another ground on appeal or assert a general ground at trial and then specify more particular grounds on appeal. This is well settled. *State v. Garcia-Garcia*, 309 Kan. 801, 808-11, 441 P.3d 52 (2019); *State v. Dukes*, 290 Kan. 485, 489, 231 P.3d 558 (2010).

Here, the trial transcript unambiguously shows Scheetz failed to preserve his subsection (g) definitional issues for appellate review. The panel's "not altogether different" rationalization hopelessly strains the governing statute's plain language and our well-established caselaw. See *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022) ("When a statute is plain and unambiguous, the court must give effect to express language."); *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 168, 298 P.3d 1120 (2013) ("[T]he Court of Appeals is duty bound to follow Kansas Supreme Court precedent.").

16

*Campbell* is instructive. There, defense counsel attacked a witness' credibility at trial. When the State called a second witness to rehabilitate the first's credibility, defense counsel timely objected on hearsay grounds and of bolstering or vouching for the first witness' credibility. But on appeal, the defendant contested the evidence on the basis that the second witness' testimony impermissibly used specific prior instances. See K.S.A. 60-422(d) (specific prior instances to rehabilitate witness' credibility are inadmissible). The *Campbell* court declined to consider the defendant's rephrased objection. 308 Kan. at 771. Likewise, on appeal, Scheetz fashioned a new argument over sexual misconduct's statutory definition that was never presented to the district court.

Similarly, in *State v. Bryant*, 272 Kan. 1204, 1207-08, 38 P.3d 661 (2002), a defendant raised a hearsay objection at trial but on appeal claimed a Confrontation Clause violation. The *Bryant* court refused to consider the confrontation claim because the defendant failed to make that objection in the district court. And in *State v. McCaslin*, 291 Kan. 697, 708, 245 P.3d 1030 (2011), the court noted "there may be some overlap of objections based upon hearsay and confrontation" because "all statements violating the Confrontation Clause are also necessarily hearsay." But the *McCaslin* court still held "their overlap does not satisfy the specificity requirement of the objection" and reaffirmed *Bryant*'s holding and its rationale. 291 Kan. at 708.

Here, Scheetz did not object to the internet search history on a statutory interpretation ground. Rather, he specifically objected at trial that the internet search history did not qualify as an "act or offense of sexual misconduct" *because* it contained "nothing illegal." These are not the same thing, and while the trial objection might superficially resemble Scheetz' subsection (g) appellate argument at a quick glance, the precedent set by *Campbell*, *Bryant*, and *McCaslin* uniformly indicate this "nothing illegal" objection is insufficient under K.S.A. 60-404 to allow the panel to engage in the subsection (g) interpretation issue advanced for the first time on appeal. See *City of*

17

*Overland Park v. Cunningham*, 253 Kan. 765, 772, 861 P.2d 1316 (1993) ("[T]he trial should not be a game, where counsel is forced to guess what the objection is and what the trial court considers is lacking. A balance should be struck. . . . [I]t should be specific enough that the trial judge can rule intelligently upon the objection, and the specific contemporaneous objection must be made known to the opposing counsel when the objection is lodged.").

Similarly, Scheetz never objected to the young girls' testimony on statutory interpretation grounds. At trial, the defense expressly objected to the girls' testimony as lacking specificity, lacking sexual content, and failing to qualify as a prior bad act. These cannot be converted on appeal into the more general subsection (g) argument the panel embraced as to this testimony. See *McCaslin*, 291 Kan. at 708.

Our caselaw sets out the appropriate process for preserving appellate review to the admission of evidence, and that process was not followed here. K.S.A. 60-404 cannot be glossed over by appellate judges lured into exploring uncharted legal frontiers. Left unchecked, the panel's approach "would undermine the language and the purpose of the [60-404] objection rule." *State v. Dukes*, 290 Kan. 485, 489, 231 P.3d 558 (2010).

Finally, we must discuss Scheetz' frequent refrain that K.S.A. 60-404 is a prudential rule rather than a jurisdictional bar, citing *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013). He seems to suggest that absent a jurisdictional bar, appellate judges can ignore these statutory directives when it suits them. But our caselaw shows we have not been so cavalier with this prudential rule. See, e.g., *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012) (timely objection not required during bench trial because same suppression arguments were made to the same judge pretrial); *State v. Breedlove*, 295 Kan. 481, 490-91, 286 P.3d 1123 (2012) (noting record made clear trial judge understood the legal basis for an objection when counsel simply referred to it as an

"'earlier objection'" or a "'prior objection'"). Even in *Hart*, the court only agreed to proceed with its "unorthodox approach" of reviewing a colorable preservation concern on appeal because both parties agreed to do so, in hopes of gaining "a definitive interpretation" of a recently amended statute. *Hart*, 297 Kan. at 510. That situation is not presented here. We hold the *Scheetz* panel erred in proceeding with the K.S.A. 2022 Supp. 60-455(g) issues as it did.

We also hold that in taking the approach it took, the panel abused its statutory power under K.S.A. 60-2101(a) (Court of Appeals' appellate jurisdiction) to consider the propensity evidence question concerning subsection (g)'s definition. And the panel's first-of-its-kind merits holding that the statutory listings are exhaustive rather than exemplary necessarily leads us to yet another concern because we now must decide how to treat the panel's subsection (g) analysis when it so clearly overstepped appellate boundaries to reach the merits. See *McCaslin*, 291 Kan. at 709 ("Under the separation of powers doctrine, this court has no constitutional authority to essentially negate the legislature's decision to require a specific ground of objection in the trial court by then allowing a different objection to be argued in the appellate court.").

In *Hart*, the court held a panel's failure to follow the rule of applying "'the statutory law on evidence as it was at the time'" "render[ed] all that [the panel] said regarding the interpretation and application of the amended statute erroneous; it has no force or effect as precedent." *Hart*, 297 Kan. at 510. Similarly, K.S.A. 60-2101(b) (Supreme Court's appellate jurisdiction) provides us with "jurisdiction to correct, modify, vacate or reverse any act, order or judgment of a district court or court of appeals in order to assure that any such act, order or judgment is just, legal and free of abuse." Based on this, we vacate the panel's decision on K.S.A. 2022 Supp. 60-455(g) and hold it should have no force or effect as precedent.

19

RELEVANCE OF THE INTERNET SEARCH HISTORY EVIDENCE

Defense counsel at trial not only renewed the earlier pretrial objection (not a prior bad act) about the internet search history but added three other grounds, including relevancy. These added grounds apparently went unnoticed by the panel because it included the search history evidence in its erroneous "not altogether different" preservation analysis, rather than just directly addressing relevancy because both parties and the district court considered it. *Scheetz*, 63 Kan. App. 2d at 10, 26. Regardless, the State's challenge to the panel's decision is properly preserved for our review.

*Additional factual and procedural background*

As noted earlier, the State filed a pretrial motion to admit evidence of Scheetz' internet search history under K.S.A. 2019 Supp. 60-455(d). That motion described how the evidence would demonstrate Scheetz' involvement in "search[ing] for and/or view[ing] child pornography." The court granted the motion.

During trial, when the prosecutor sought to admit this evidence, defense counsel timely objected, asserting it did not "even fall[] within the order of the court on 60-455 order" since the evidence lacked reference to child pornography. Then, the defense argued the evidence was "not relevant." And the district court ruled the evidence relevant to show Mr. Scheetz' sexual attraction to young girls, even if they might be websites for girls over the age of 18 but appear young or show young girls in the title.

The court asked whether defense counsel wanted to redact any irrelevant, general search terms from the excerpts. Counsel responded, "I'm not asking for further redactions." So the court admitted both the general and the sexually explicit search language, and the defense preserved its relevancy objection for appeal.

20

*Standard of review*

"[T]here are two elements of relevancy: a materiality element and a probative element. . . . An appellate court reviews a district court's determination that evidence is probative for abuse of discretion whereas the district court's decision regarding materiality is reviewed de novo." *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 1, 303 P.3d 680 (2013). "A district court abuses its discretion if no reasonable person could agree with its decision or if its exercise of discretion is founded on a factual or legal error." *State v. Butler*, 315 Kan. 18, Syl. ¶ 1, 503 P.3d 239 (2022).

*Discussion*

Our law is well established: "Unless prohibited by statute, constitutional provision, or court decision, all relevant evidence is admissible. K.S.A. 60-407(f)." *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). "'Relevant evidence' means evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). "Evidence is probative if it has any tendency in reason to prove a fact," and "[m]ateriality addresses whether a fact has a legitimate and effective bearing on the decision of the case and is in dispute." *Boleyn*, 297 Kan. 610, Syl. ¶ 1.

Without conducting a pertinent materiality-and-probative analysis within the specific context of Scheetz' case, the panel instead relied on *Boleyn* and *State v. Smith*, 299 Kan. 962, 327 P.3d 441 (2014), as well as *State v. Ewing*, No. 118,343, 2019 WL 1413962 (Kan. App. 2019) (unpublished opinion)—none of which are on point. So, to revisit the admissibility question, we engage in a materiality-and-probative analysis at the outset and then explain why the cases cited by the panel are inapplicable.

First, we consider materiality. Recall the district court correctly found the evidence relevant to establish Scheetz' sexual attraction towards young girls and a stepfather-stepdaughter theme. It determined the evidence was relevant because sexual exploitation of a child requires the State prove sexual attraction beyond a reasonable doubt. See K.S.A. 2022 Supp. 21-5510(a)(2) ("possess[ed] any visual depiction of a child under 18 years of age shown or heard engaging in sexually explicit conduct *with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender . . . .*" [Emphasis added.]). To demonstrate Scheetz' specific intent and sexual attraction to underage girls, the State presented his search history with the terms of "Sex At 9 years old" and "Step Dad started blowing me at age 5." We hold Scheetz' sexual desire for underage girls constituted a material fact in the child exploitation charge.

Second, turning to the probative element, the court in *State v. Willis*, 312 Kan. 127, 142, 475 P.3d 324 (2020), "stressed that relevance is a generally low threshold." There, the *Willis* court discussed *State v. Scott-Herring*, 284 Kan. 172, 175-77, 159 P.3d 1028 (2007) (holding that a photo showing the defendant with a revolver was relevant to establishing his possession of a gun like the possible murder weapon). The *Willis* court emphasized the evidence did not need to prove the gun in the photo was the actual murder weapon to be admissible. It noted that if the testimony sufficiently stated the similarity between a weapon in the defendant's possession and the weapon used in the crime, the lack of positive identification "'goes to the weight, not the admissibility, of the evidence.'" *Willis*, 312 Kan. at 143 (quoting *Scott-Herring*, 284 Kan. at 177).

The panel erred in holding the search history evidence was irrelevant. The panel reasoned there was "no indication as to how long Scheetz accessed these webpages or whether he even watched the videos they contain" and "no information . . . as to what these videos depicted apart from the titles, leaving the jury to speculate about their actual content." *Scheetz*, 63 Kan. App. 2d at 28. But that is unnecessary for this evidence to be

22

admitted. Scheetz deliberately searched terms such as "Sex," "9 years old," and "age 5." It also does not matter that other irrelevant, general terms could have been redacted, because that failure was the result of defense counsel's refusal to request it when asked.

An appellate court reviews a district court's probative ruling for abuse of discretion, and we conclude a reasonable person could agree with the district court on this matter. Relevancy does not require conclusive proof of a fact—any tendency is sufficient. If evidence has even limited probative value, it should be assessed against its prejudicial effect when an opponent raises an issue under K.S.A. 60-445 (allowing exclusion of evidence if its probative value is substantially outweighed by its undue prejudicial effect) but not under K.S.A. 60-407(f) ("[A]ll relevant evidence is admissible.").

Moving next to the three cases relied on by the panel, they are not on point. In *Boleyn*, the victim was a boy under 14. During direct examination, defense counsel asked the defendant if he was gay, and he said no. After that, the court admitted the parties' stipulation the defendant possessed photographs and video showing pornographic homosexual and heterosexual images under K.S.A. 60-420 (evidence affecting credibility). *Boleyn*, 297 Kan. at 624-25. The *Boleyn* court held the stipulation's admission was error because the evidence demonstrated he could be bisexual, bolstering his claim he was not gay. It reasoned "at the most, the evidence establishes that Boleyn may have had an interest in viewing both homosexual and heterosexual pornography, but this conclusion is a far cry from the inference that Boleyn is exclusively attracted to or sexually active with men." 297 Kan. at 626-27. Admittedly, there is one sentence in *Boleyn* the panel relied on that may cause misunderstanding: "[W]e hold that evidence of Boleyn merely possessing homosexual pornography would not be probative to rebutting or impeaching his claim of not being gay." 297 Kan. at 626; see *Scheetz*, 63 Kan. App. 2d at 26-27. The problem, of course, is this language must be read in context with the case facts discussed above, not in isolation.

23

In *Smith*, the defendant unlawfully touched two girls wearing bikini-style bathing suits while photographing them in provocative poses. The State sought to admit photographs showing pornographic magazines and video covers seized from the defendant's house. The defense objected to the photographs' relevance, and the State countered they undermined the defendant's claim "'he was gay' and that 'he/she's or women with penises, is what aroused him.'" *Smith*, 299 Kan. at 973-74. The *Smith* court rejected the State's justification because its rationale was logically inconsistent with *Boleyn*. The court noted, "If possession of homosexual pornography is not relevant to prove a person's sexual practices, then possession of heterosexual pornography is likewise not relevant for that purpose." 299 Kan. at 976.

When it comes to one's real sex life, such evidence could be viewed as irrelevant; but Scheetz was charged with sexual exploitation of a child under K.S.A. 2019 Supp. 21-5510(a)(2), so the question is whether he "possess[ed] any visual depiction of a child under 18 years of age . . . *with intent to arouse or satisfy the sexual desires . . . of the offender*." (Emphasis added.) In this regard, *Smith* is distinguishable. Scheetz' search history had at least some probative value to demonstrate the material fact of the required element of sexual desire for an underage child. As discussed, the search history meets K.S.A. 60-401(b)'s requirement that evidence demonstrate "*any tendency* in reason to prove *any material fact*." (Emphases added.) Cf. *State v. Creitz*, No. 98,852, 2009 WL 596522, at *6 (Kan. App. 2009) (unpublished opinion) ("[W]e view the probative value of this evidence to be somewhat tenuous. Nevertheless, given our standard of review and the low threshold suggested by the 'any tendency' standard for relevance found in K.S.A. 60-401[b], we conclude that the district court did not err in finding that evidence of the wire warning was relevant.").

24

In *Ewing*, 2019 WL 1413962, at \*17-24, another panel's unpublished opinion, evidence of a defendant's internet search history accessing violent pornography was admitted not under K.S.A. 60-455 but simply as relevant evidence. The *Ewing* panel found error, reasoning there was no evidence he had viewed the portions of the videos containing acts like those of which he was charged: rape, aggravated criminal sodomy, and battery. 2019 WL 1413962, at \*23. And following *Ewing*, the *Scheetz* panel held the evidence had no probative value because there was no indication "whether he even watched the videos [those webpages] contained" and "what these videos depicted apart from the titles, leaving the jury to speculate about their actual content." *Scheetz*, 63 Kan. App. 2d at 28. But what really mattered here was not whether Scheetz *watched* the videos, but that he *searched* particular terms in his internet searches and visited websites with those titles. The exhibits contained the "Last Visited" information, providing the exact time the websites were viewed. And while the contents of videos or images provided by those websites might have helped the State's theory of its case, they were not necessary to admit the evidence.

In sum, we conclude the panel erred in holding the search history was irrelevant under *Smith*, *Boleyn*, and *Ewing*. Those cases are distinguishable. We also conclude that under a materiality-and-probative analysis, the evidence tended to prove the material fact of sexual desire, which was a criminal element of the sexual exploitation of a child charge. The district court correctly determined it was relevant.

Finally, we note the panel declined to address undue prejudice under K.S.A. 60-445 as it found the evidence irrelevant. Scheetz failed to cross-petition on this matter. See Supreme Court Rule 8.03(c)(3) (if Court of Appeals assumes an outcome on an issue without deciding or does not decide an issue properly presented to it, "the cross-petitioner must raise that issue to preserve it for review") (2023 Kan. S. Ct. R. at 57). Consequently, we do not proceed to the undue prejudice question.

25

On appeal, Scheetz claimed the prosecutor misstated the facts and law and presented arguments designed to inflame the jury's passions during closing arguments. The panel agreed the prosecutor misstated facts when claiming: (1) G.H. received "a picture of the defendant's erect penis," and (2) B.C. "started to think it wasn't an accident" when referring to Scheetz sending H.T. a naked photo. It concluded these errors were isolated and comparatively minor, so they were individually harmless. *Scheetz*, 63 Kan. App. 2d at 33-34. But it added these prosecutorial errors to its cumulative error analysis when reversing Scheetz' convictions. 63 Kan. App. 2d at 34-36. The panel rejected Scheetz' other prosecutorial error arguments.

In its petition for review, the State contests the panel's error determinations. Scheetz did not cross-petition on the matters decided against him, so they are settled. See Rule 8.03(c)(3) (2023 Kan. S. Ct. R. at 57) ("The purpose of a cross-petition is to seek review of specific holdings the Court of Appeals decided adversely to the cross-petitioner."). As explained, we agree with the State. The first comment accurately stated the evidence because Scheetz told an interviewing officer he sent G.H. a picture of his erect penis. The second error was a reasonable inference based on the evidence.

*Standard of review*

An appellate court employs a two-step analysis to review prosecutorial error claims: error and prejudice. To decide error, the court determines whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. *State v. Sieg*, 315 Kan. 526, 535,

509 P.3d 535 (2022). Upon finding an error, the court considers "whether the error prejudiced the defendant's due process rights to a fair trial." 315 Kan. at 535.

*Discussion*

On appeal to the panel, Scheetz claimed the prosecutor's statement that G.H. received a picture of his "erect penis" was error because there was no evidence his penis was erect in the photo. At that time, the State mistakenly conceded the point but argued it was a reasonable inference because G.H. testified the photo came with a message stating he was waiting for "you to get here." The panel held there were two errors: it was not supported by the evidence, and it was designed to inflame the jury's passions. *Scheetz*, 63 Kan. App. 2d at 31. But the record shows a different reality.

Before this court, the State corrects its earlier mistake by pinpointing the exact location in the record during a police interview when Scheetz said his penis was "erect" on the photo sent to G.H. The interview reflects this exchange:

"[Q (first officer)]: Okay. . . what are we talkin' about here? What was the picture of?

"[A (Scheetz)]: It was a picture of my penis.

"[Q]: Okay . . . paint a picture for me. Were you in bed, were you . . . .

"[A]: Yeah, I was like sittin' in bed . . . .

"[Q]: Okay . . . .

"[A]: It was a message sayin' just waitin' for you to get here.

27

"[Q]:  Okay.

"[Q (second officer)]:  Erect? Not erect? Hands . . . .

"[A]:  Erect.

"[Q (second officer)]:  —involved?

"[A]:  Erect, yeah."

Scheetz argues this correction was "unpreserved" from the Court of Appeals, so it is improper for us to consider it now. We disagree. Informing a reviewing court where to look in the record to establish a fact is not equivalent to raising a new issue. Even so, the question whether the evidence supported the prosecutor's "erect" statement was properly preserved by Scheetz in the Court of Appeals when he claimed the prosecutor fabricated this as fact. And the issue remains properly presented to us by the State because it challenges the panel's ruling that this fact was fabricated and inflammatory. See Rule 8.03(a)-(b).

Besides, it is the parties' duty to supply a statement of the facts in their briefs and "key[] to the record on appeal by volume and page number." Kansas Supreme Court Rule 6.02(a)(4) & 6.03(a)(3) (2023 Kan. S. Ct. R. at 36-37). And a consequence of a party's failure to do so is:  "The court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal." Rule 6.02(a)(4) & 6.03(a)(3). But this circumstance does not implicate any preservation rule. Moreover, as the State correctly notes, the Kansas Rules of Professional Conduct 3.3(a)(1) (2023 Kan. S. Ct. R. at 390) declares:  "A lawyer shall not knowingly . . . make a false statement of fact . . . or fail to correct a false statement of material fact . . . previously made to the tribunal by the lawyer." Here, the State is not raising a new issue.

28

Rather, it attempts to correct a misstatement of material fact by the panel relevant to a properly preserved issue.

The panel also held the State misstated the fact to inflame the jury. *Scheetz*, 63 Kan. App. 2d at 31. But since we know from the record it was a correct statement, the prosecutor's closing accurately described the evidence, and the transcript shows the prosecutor did not inflame the jury when mentioning it. The "erect penis" references occurred only twice, both times within close proximity, and in the context of a factual recitation. The prosecutor simply said:

"And that rings a bell for [B.C.] because [his] 12-year-old daughter has gotten a picture of the defendant's *erect* penis that he sent to her. And she immediately says, 'I've got to block you,' you know. She's sending a text to her parents, 'Oh, my gosh, call me as soon as you get done with the concert. Call me as soon as you can.' But [B.C.] hadn't originally done anything about it because he chalked it up to being an accident. Things happen with cell phones, he just assumed it was intended for somebody else.

"But once [B.C.] had the information that Norton was also investigating the defendant for exactly the same behavior with another girl, he started to think it wasn't an accident. He started to think it's an intentional act on behalf of the defendant, that he's not just accidentally sending pictures of his *erect* penis to random teenagers." (Emphases added.)

What is obvious is that the prosecutor did not sensationalize this evidence, despite its aggravating nature. No error occurred.

The other prosecutorial error the panel found concerned the State's revisiting the inception of the investigation that led officers to M.C. The prosecutor said:

29

"This actually began with the tip from the defendant. He called [Assistant Chief of Police for the Norton Police Department, Jody Enfield] and said, 'I think [H.T.] is involved with a local officer. You should check into that.' As a result of that, . . . Enfield did go talk to [H.T.], and she said it's not a local officer . . . . That's off base here. But [Enfield] does talk to her about some pictures that she has gotten, and . . . [H.T.] won't tell him who it is, but she says she'll say if he guesses.

"So Assistant Chief Enfield guesses, and he says, 'Is it Mark Scheetz?' And she said yes. It was the defendant that she had gotten naked pictures from.

"So then . . . Enfield takes the next step and talks to [B.C.] . . . . And when he talks to [B.C.], he [asked], you know, 'Is the defendant still working for you?' And [B.C.] says, 'No, he's moved on. But why?' [Enfield] said, 'Well, you know, we've got a case over here where the defendant was sending naked pictures to [H.T.] . . . .'

"And that rings a bell for [B.C.] because [his] 12-year-old daughter has gotten a picture of the defendant's erect penis that he sent to her. . . . *But [B.C.] hadn't originally done anything about it because he chalked it up to being an accident. Things happen with cell phones, he just assumed it was intended for somebody else.*

"But once [B.C.] had the information that Norton was also investigating the defendant for exactly the same behavior with another girl, *he started to think it wasn't an accident. He started to think it's an intentional act on behalf of the defendant, that he's not just accidentally sending pictures of his erect penis to random teenagers.*" (Emphases added.)

Scheetz argues the prosecutor's statement that B.C. "began to think Scheetz sent the photo to G.H. intentionally" was wrong, and the panel agreed by relying on the testimony of Brian Diercks. *Scheetz*, 63 Kan. App. 2d at 30-31. Diercks testified:

"[W]e kind of took [G.H.] as possibly just . . . an accident because it could have been . . . possibly [Scheetz] was trying to send it to his girlfriend . . . . So we just kind of chalked that up as a possible accident with no intent or anything like that.

"And so when we received that phone call from Officer Enfield, we discussed, talked about, you know, since [G.H.] had sent out a streak off of Snapchat, and so that's how she received that photo, we believe that's how she got it is because on the streak, she became the top of his list. And if what Enfield was telling us, that this 16-year-old girl was receiving . . . Snapchat messages, pictures, then maybe that photograph that was actually sent to [G.H.] was actually supposed to go to the 16-year-old girl."

But a fuller record review tells a more complete story. At trial, B.C. testified Enfield called to inform him he was working on an electronic solicitation case involving Scheetz. After that call, B.C. talked with Dierck. B.C. told the jury: "After discussing what [Enfield] had informed . . . us, *we felt that it was in the best interest to contact the Kansas Bureau of Investigation*." (Emphasis added.) And based on this, we conclude the prosecutor's remark constitutes a reasonable inference. B.C. said he felt "it was in the best interest to contact the Kansas Bureau of Investigation," which contradicts the panel's conclusion because if he honestly believed what happened to his daughter was an accident or innocent mistake, there would be no reason to contact the KBI. No prosecutorial error occurred.

CUMULATIVE ERROR

The panel used a cumulative error analysis to reverse Scheetz' convictions. But we have determined no errors occurred, so this doctrine does not apply. See *Sieg*, 315 Kan. at 536.

Judgment of the Court of Appeals reversing the district court is reversed on the issues subject to review and is vacated in part. Judgment of the district court is affirmed.

31