,

NOT DESIGNATED FOR PUBLICATION

No. 126,938

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JEREMEY DAVID BROWN,
*Appellant.*

MEMORANDUM OPINION

Appeal from Scott District Court; CHRISTOPHER SANDERS, judge. Submitted without oral argument. Opinion filed January 2, 2026. Affirmed in part and dismissed in part.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BRUNS and COBLE, JJ.

PER CURIAM: Jeremey David Brown appeals after a jury found him guilty of one count of rape and two counts of aggravated indecent liberties with two different children. He also appeals the district court's denial of his motion for a new trial and change of venue. Based on our review of the record on appeal, we find that Brown failed to preserve the issue of whether the district court abused its discretion by allowing evidence to be presented at trial about an alleged incident of prior sexual misconduct. Likewise, we find that the district court did not abuse its discretion in denying Brown's motion for new trial and change of venue. Thus, we affirm in part and dismiss in part.

1

,

FACTS

We will briefly summarize the facts in this section of our opinion and set forth additional facts as necessary to address the issues in the Analysis section. It is undisputed that a jury convicted Brown of one count of rape and two counts of aggravated indecent liberties with a child, involving different children. Yet the jury acquitted him of attempted aggravated indecent liberties with a third child.

In 2012, C.M., who was seven years old at the time, attended a birthday party at Brown's house in Scott City for his then five-year-old daughter, T.B. The girls were related on their mother's side of the family. C.M. stayed overnight at Brown's house since she was from out-of-town. According to C.M., Brown woke her up during the night and told her to follow him downstairs to the living room. Once in the living room, Brown exposed his penis, demonstrated what he wanted C.M. to do, and forced her to physically stimulate him—with her hand—in an up-and-down motion. About eight years later, C.M. told her mother about this incident. C.M. later discussed this incident as well as a similar event which occurred in Dodge City during an interview with a therapist.

About two years after the incident involving C.M., T.B.—who was now six years old—went into her father's bedroom and went to sleep next to him. At some point, her pants were removed after she had wet herself. According to T.B., Brown removed her pants, started to touch her inappropriately, and forced something—she believed to be his penis—partially into her vagina. The next morning, T.B. told her older sister and then called her mother to tell her what happened. In turn, her mother called the Scott City police. That same day, a physician assistant found some mild erythema or "redness" present in T.B.'s vaginal vault. During a subsequent medical examination by a sexual assault nurse examiner, T.B. reported pain in the genital area.

2

,

A family friend, A.H., also reported another incident involving Brown that allegedly occurred in 2018. At the time, 14-year-old A.H. was spending the night at Brown's house with his daughters. According to A.H., Brown grabbed her arm to wake her up on several occasions. Brown then made what she believed to be sexual gestures towards his privates. A.H. also reported that on at least one of these occasions, Brown attempted to pull her hand towards his privates while he was in his underwear.

Ultimately, the State charged Brown with one count of rape and one count of aggravated indecent liberties with a child for the incident involving T.B.; one count of aggravated indecent liberties with a child for the incident involving C.M.; and one count of attempted aggravated indecent liberties with a child for the incident involving A.H. Prior to trial, the State filed a K.S.A. 60-455 motion seeking to admit evidence of multiple incidents of previous sexual misconduct with minors under K.S.A. 60-455(d). The district court determined that most of this evidence would be unduly prejudicial and excluded it from being presented at trial. However, it ruled that the alleged victims could testify regarding the charges in the case.

The district court commenced a four-day jury trial on April 17, 2023. At trial, the State presented the testimony of 15 witnesses—including the testimony of C.M., T.B., and A.H. The State also offered seven exhibits that were admitted into evidence. These exhibits included video recordings of interviews with both C.M. from 2020 and T.B. from 2014. The defense called two witnesses, including Brown. In addition, the defense offered five exhibits that were admitted into evidence. Much of the defense testimony related to the hostility between T.B.'s mother and Brown regarding their divorce as well as Brown's belief that the children colluded to accuse him of misconduct.

After deliberation, the jury found Brown to be guilty of rape and two counts of aggravated indecent liberties with a child. But the jury found him to be not guilty on the charge of attempted aggravated indecent liberties with a child. Several months after the

3

trial concluded, Brown filed a motion for new trial and a change of venue. Alternatively, Brown moved for the district court to grant him a downward durational departure.

In denying the motion for new trial and change of venue, the district court explained:

"We have a process for selecting jurors that has been established for countless years. It worked inasmuch as those potential jurors that stated . . . that they already made their mind up were excluded. They weren't part of the mix. We didn't allow them to become part of the mix. They didn't have the ability to taint the pool. They . . . were honest, told us how they felt, and they were released.

"The community feelings, pro or negative, if they exist at all, have been here for years now. They were here prior to the beginning of this trial . . . . [A]nd yet we had the trial here in Scott County, where it should have been unless it was asked to be moved somewhere prior to the trial because of the alleged negative feelings in the community. But it wasn't. We heard it here in Scott County.

"We . . . went through, potential jurors, and we asked them about the rumors, and all but one admitted, sure, we heard rumors. Well, of course they have. We're in Scott City, Scott County, Kansas. It is a small community. You can't help but hear rumors, good, bad, or ugly. And they heard rumors about this. But every one of those jurors that we selected to serve . . . including the two that ended up being alternates, said under oath that they could put those rumors aside and be fair and impartial. If we now say we doubt their word, or . . . say they were lying . . . then the voir dire process and the jury selection means nothing.

"And we don't have any evidence that any of those things happened with these jurors . . . . And friends of friends of friends on Facebook is so tangential. I have friends on Facebook that I don't really know, and the only . . . thing I heard as far as from some of these Facebook friends of friends is, they would like a post . . . .

4

,

> "Ms. Brown said she . . . knew of no direct communication with any of these friends of friends of friends with the . . . jurors . . . .

> "So for all of those reasons . . . and one other one I want to point out. We can't go by what might have, could have, should have, or would have been when there was no direct communications. Also, the news media post . . . with the redaction . . . listed what Mr. Brown had been charged with. But I wrote down the last phrase of that, 'He is innocent until proven guilty.' Read the whole post. It says Mr. Brown . . . is innocent until proven guilty. . . . So that post puts everybody on notice that Mr. Brown was innocent until proven guilty. He was proven guilty.

> "So for those reasons there is not going to be a new trial. . . . I'm not going to get into why [the jury] didn't take any longer . . . . [T]hey deliberated, they considered the evidence, they heard both sides of the story, and they came back quickly in this case with guilty of three of the four charges. I'm not going to stand in the way of that and say they were wrong. I can't get into their heads anymore than the rest of us can, nor would I want to."

The district court also denied Brown's motion for a downward durational departure and sentenced him to two consecutive sentences of life imprisonment without the possibility of parole for 25 years. The district court then ordered lifetime postrelease supervision on each of the three charges for which he was convicted.

Thereafter, Brown timely appealed his convictions.

ANALYSIS

There are two issues presented on appeal. The first issue is whether the district court improperly allowed the State to introduce evidence at trial of an uncharged allegation of prior sexual misconduct. The second issue is whether the district court incorrectly denied Brown's motion for new trial and change of venue. For the reasons

5

,

stated below, we find that the first issue fails for lack of preservation, and we find that the district court did not abuse its discretion on the second issue.

*Preservation of Evidentiary Issue*

K.S.A. 60-455 governs the admission of evidence at trial relating to a defendant's past wrongdoing. Generally, specific instances of a defendant's prior crimes or civil wrongs cannot be used as evidence to prove a tendency to commit another crime or civil wrong. K.S.A. 2022 Supp. 60-455(a). But there are several exceptions to this general rule, including K.S.A. 2022 Supp. 60-455(d). This exception allows evidence that a defendant committed "another act or offense of sexual misconduct" to be admissible and "considered for its bearing on any matter to which it is relevant and probative"—in a criminal case involving sex offenses.

Furthermore, K.S.A. 60-404 provides that "[a] verdict or finding shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." "'Preservation is a question of law subject to plenary review.'" *State v. Scheetz*, 318 Kan. 48, 58, 541 P.3d 79 (2024). As such, a determination of whether an evidentiary issue has properly been preserved "presents a critical threshold question." 318 Kan. at 54. This is because "K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial." *State v. Reed*, 300 Kan. 494, Syl. ¶ 6, 332 P.3d 172 (2014). In other words, "K.S.A. 60-404 directs that the verdict 'shall not' be set aside, nor the judgment reversed, without a timely [and specific] objection." *State v. Clingerman*, 63 Kan. App. 2d 682, 688, 536 P.3d 892 (2023).

Here, the State filed a pretrial motion to admit propensity evidence under K.S.A. 2021 Supp. 60-455(d). In the motion, the State moved to admit evidence from several

,

witnesses of instances of similar acts of sexual misconduct by Brown over the course of more than 20 years. The district court excluded evidence regarding several prior incidents because they occurred so long ago. However, the district court permitted the victims in this action to testify regarding the charges in the case.

At trial, defense counsel asked C.M. during cross-examination the following questions about the incident involving Brown in 2012:

"Q. Okay. You said that you didn't tell anybody about this because you were scared?
"A. Yes.
"Q. Did [Brown] ever threaten you?
"A. No.
"Q. Did he ever say, [d]on't tell anybody about this?
"A. No.
"Q. And this never happened again; right?
"A. No.
"*Q. It never happened before?*
"*A. Yes.*
"*Q. To you?*
"*A. Yes.*
"*Q. In your report here, you only mentioned the 2012 event in Scott City?*
"*A. Yes.*
"Q. And what occurred besides you thinking about it that you decided you were going to reveal this in 2020, almost 8 years after you claim this happened?
"A. I couldn't stop thinking about it.

"MR. HAMPTON:  That's all the questions I have." (Emphases added.)

Afterwards, the following occurred during the prosecutor's redirect:

"Q. [C.M.], there was another incident; wasn't there?
"A. Yes.

7

"Q. And you—you actually had originally disclosed that when you were talking at the child advocacy center?

"A. Yes.

"Q. That happened in another county; didn't it?

"A. Yes.

"Q. Tell us what happened.

   "MR. ZENTNER:  I'm sorry, the defense opened the door on this.

"A. We were at their house—

   "*MR. HAMPTON:  Judge, I'm—now I'm going to have to ask to approach the bench*.

   "*THE COURT:  Okay*.

   "*(Bench discussion was had off the record.)*

"Q. *(By Mr. Zentner) I apologize. We were trying to keep this limited here, but we're now stuck with this. Tell me what happened.*

"A. We were in their house in Dodge City, and we were in the basement, and he was sitting on the chair. And I was climbing all around him between—so there was a—like, a recliner chair right here (indicating) and right next was a couch. And my cousin Macy and I were climbing all around him, and then he pulled down his pants and told us to keep climbing around him in circles but with our hands on his penis.

"Q. This was in Dodge City?

"A. Yes.

"Q. Do you remember if this was before or after the one that—the incident in Scott City; do you recall?

"A. I think it was before." (Emphases added.)

As our Supreme Court held in *Scheetz*, "[p]reserving an evidentiary challenge under K.S.A. 60-404 requires a timely and specific objection. *It is not optional*." (Emphasis added.) 318 Kan. at 59. In the present case, the record does not show that the defense counsel asserted a timely and specific objection at trial. See *State v. Solis*, 305 Kan. 55, 62-64, 378 P.3d 532 (2016). Instead, C.M. was first asked by defense counsel—during cross-examination—about whether Brown had committed prior sexual misconduct toward her. And when the prosecutor attempted to follow up on this line of questioning,

8

,

defense counsel simply requested a bench conference without stating an objection on the record.

Furthermore, it is impossible for us to glean from the record what occurred during the bench conference because it was not recorded. All we can tell from the record is that the prosecutor continued this line of questioning, without objection, after the bench conference concluded. Even assuming that defense counsel asserted an objection, we do not know the basis for the objection or the specific grounds relied upon. Furthermore, it was Brown's obligation to preserve his specific objection—on the record—to allow us to adequately review the issue on appeal. See *Scheetz*, 318 Kan. at 59-61. Accordingly, we conclude that Brown has failed to preserve this issue for appeal.

*Motion for New Trial and Change of Venue*

Next, Brown asserts that the district court improperly denied his motion for new trial and change of venue. Although he did not seek a change of venue prior to trial, Brown argues that the jury was biased against him due to Scott City being a small community alongside social media activity that took place before the commencement of the trial. In response, the State argues that Brown has failed to show that misconduct occurred and that a reasonable person could agree with the district court's denial of the posttrial motion.

We review a district court's denial of a motion for new trial under an abuse of discretion standard. *State v. Hirsh*, 310 Kan. 321, 343, 446 P.3d 472 (2019). Likewise, we also review a district court's denial of a motion for change of venue under K.S.A. 22-2616(1) for abuse of discretion. *State v. Galloway*, 311 Kan. 238, 241, 459 P.3d 195 (2020). A district court abuses its discretion if no reasonable person could agree with its decision, if it commits a factual mistake, or if it commits a legal error. *State v. Butler*, 315 Kan. 18, Syl. ¶ 1, 503 P.3d 239 (2022). The party asserting that the district court abused

9

'

its discretion—in this case Brown—bears the burden of showing such an abuse. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

When reviewing claims of juror misconduct, Kansas courts use a two-step inquiry in deciding if a new trial is warranted. The first step is to determine "'(1) whether juror misconduct occurred, and (2) if so, whether the misconduct substantially prejudiced the right to a fair trial, meaning whether the State can show beyond a reasonable doubt that the misconduct did not affect the trial's outcome.'" *Hirsh*, 310 Kan. at 343 (quoting *State v. Longoria*, 301 Kan. 489, 530, 343 P.3d 1128 [2015]). Yet where the record conclusively reveals that there was no juror misconduct under the first step, there is no reason to move to the second step. *Hirsh*, 310 Kan. at 344.

On appeal, Brown contends that several jurors had connections with individuals who posted their opinions about the State's charges against him. At a hearing on the motion for new trial and change of venue, Brown's current wife testified to alleged social media connections that she believed possibly tainted the jury's verdict. Yet Brown's attorney acknowledged that the defense was unable "to independently confirm those, because the people who have those ideas and are out dispersing them will not talk to us. We don't have the ability to simply go and have somebody come in voluntarily and admit, yes, I was saying these things."

Yet as the State pointed out, there is no evidence showing that jurors "talked to any of the[] people" who posted about Brown's case on social media. There is also nothing in the record suggesting that the jurors prejudged the case, lied during voir dire, or withheld pertinent information during the jury selection process. On the other hand, a review of the record shows that Brown's attorney had the opportunity to ask questions of the prospective jurors during voir dire. Still, the defense passed three panels of 14 prospective jurors for cause. Because of these points, it is purely speculative to suggest

10

,

that the jurors committed misconduct. Accordingly, Brown has failed to meet the first prong of the *Longoria/Hirsh* analysis.

Moreover, it is not necessary for us to consider whether a change of venue was appropriate. As noted above, Brown did not file a pretrial motion for change of venue. Rather, he only asked for a change of venue as part of his posttrial motion for a new trial. Here, no evidence supports that juror misconduct occurred. Brown's entire argument is based on speculation. This is evidenced by the jurors' discernment in acquitting Brown of the attempted aggravated indecent liberties with a child charge—after listening to the evidence.

Affirmed in part and dismissed in part.

11